UNITED STATES of America; William F. Weld, as he is United States Attorney for the District of Massachusetts; Craig C. Donsanto, as he is Director of the Election Crimes Branch, Criminal Division, Department of Justice; and Albert S. Dabrowski, as he is Assistant United States Attorney for the District of Connecticut, Plaintiffs,

v.

Daniel KLUBOCK, as he is Bar Counsel for the Board of Bar Overseers of the Supreme Judicial Court of Massachusetts; and Charles S. Cohen, Charles B. Swartwood III, Sandra L. Lynch, Curtis Prout, Beverly W. Boorstein, William H. Welch, Paul R. Sugarman, Thomas F. Maffei, Elaine M. Epstein, Margaret Dever and Neil Houston, as they are members of the Board of Bar Overseers of the Supreme Judicial Court of Massachusetts, Defendants,

v.

MASSACHUSETTS BAR ASSOCIATION, Boston Bar Association and Massachusetts Association of Criminal Defense Lawyers, Defendant-Intervenors.

Civ. A. No. 85–4809–Z.

United States District Court, D. Massachusetts.

Feb. 28, 1986.

William F. Weld, U.S. Atty., Marth B. Sosman, Asst. U.S. Atty., Boston, Mass., for U.S.

Matthew Feinberg, Segal, Moran & Feinberg, Richard W. Renehan, Michael S. Greco, David A. Hoffman, Hill & Barlow, Max Stern, Stern & Shapiro, Jean Baker, Silverglate, Gertner, Baker, Fine & Good, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

On October 1, 1985 the Supreme Judicial Court of Massachusetts promulgated an ethical rule, Supreme Judicial Court Rule 3:08 Prosecution Function 15 ("PF 15"), to take effect on January 1, 1986. The rule provides:

> It is unprofessional conduct for a prosecutor to subpoena an attorney to a grand jury without prior judicial approval in circumstances where the prosecutor seeks to compel the attorney/witness to provide evidence concerning a person who is represented by the attorney/witness.

Plaintiffs, who are members of the Massachusetts Bar and federal prosecutors,[1] brought this action seeking both a declaratory judgment that the rule is invalid as applied to them and an injunction against its enforcement. Defendants are the members of the Board of Bar Overseers of the Supreme Judicial Court of Massachusetts and Bar Counsel for the Board, the individuals charged with enforcing the Canons of Ethics and all disciplinary rules promulgated by the Supreme Judicial Court ("SJC"). In addition, the Massachusetts Bar Association, the Boston Bar Association, and the Massachusetts Association of Criminal Defense Lawyers were permitted to intervene as defendants.[2]

This court held a hearing on plaintiffs' motion for a preliminary injunction, but all

---

1. Plaintiffs include the United States Attorney for the District of Massachusetts, the Director of the Election Crimes Branch of the Justice Department's Criminal Division, and an Assistant United States Attorney in the District of Connecticut.

2. The Massachusetts Bar Association in 1985 became concerned over the allegedly increased use of federal grand jury subpoenas to elicit information from lawyers respecting their clients. It accordingly adopted and submitted to the SJC a resolution for an amendment to the

parties have since agreed that the court might, on the basis of the arguments and submissions there presented, proceed directly to final judgment. I accordingly do so.

Plaintiffs assert that PF 15 violates the Supremacy Clause, U.S. Const., art. VI, cl. 2 and Fed.R.Crim.P. 57. The central issue underlying that assertion is their contention that PF 15 is inconsistent with Rule 17 of the Federal Rules of Criminal Procedure. A preliminary question concerns whether PF 15 has been incorporated by Local Rule 5(d)(4)(B) for the District of Massachusetts [3] and is therefore now a rule of this court. Whatever the resolution of that question, however, the ultimate issue remains the same: does PF 15 conflict with federal law? For the reasons set forth below, I hold that it does not.

Part I of this opinion discusses whether the district courts' supervisory power over grand jury proceedings includes the authority to perform the initial review that PF 15 requires. Part II-A addresses plaintiffs' claims under Fed.R.Crim.P. 57, which prohibits district courts from adopting local rules inconsistent with the Federal Rules. Part II-B answers plaintiffs' constitutional arguments.

## I. *Supervisory Power* [4]

■ "A supervisory duty, not only exists, but is imposed upon the court, to see that its grand jury and its process are not abused, or used for purposes of oppression and injustice." *In re National Window Glass Workers*, 287 F. 219, 225 (N.D.Ohio 1922). This oft-cited phrase expresses a principle that is fully recognized in our system of criminal justice. Although the investigative power of a grand jury is necessarily broad,[5] it is not unlimited; it is subject to the supervision of a judge. *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972); *United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974).

The scope of the court's supervisory duty is well documented. The court, of course, must excuse from testifying those who are protected by a constitutional, common law, or statutory privilege. Beyond that, Fed.R.Crim.P. 17(c) explicitly authorizes the court to quash a subpoena *duces tecum* if it is "unreasonable and oppressive." But, as one court has pointed out, "the District Court's supervisory power over the grand jury is not limited to granting relief from unreasonable and oppressive grand jury process. Rather, it extends ... to granting relief from any type of grand jury abuse." *Robert Hawthorne, Inc. v. Director of Internal Revenue*, 406 F.Supp. 1098 (E.D. Penn.1976).

It has thus been held that it is within the court's supervisory power to protect against such grand jury abuses as undue

---

disciplinary rules relating to the "Prosecution Function." After modifying the proposal by eliminating a requirement that the court make certain enumerated findings before granting its approval, the SJC adopted the new provision as PF 15, the rule at issue.

**3.** Local Rule 5(d)(4)(B) provides:
> Acts or omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violate the Code of Professional Responsibility, either of the state in which the attorney is acting at the time of the alleged misconduct or of the state in which the attorney maintains his principal office, shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship. The Code of Professional Responsibility means that code adopted by the

highest court of the state, or commonwealth, as amended from time to time by that court, except as otherwise provided by specific rule of this Court after consideration of comments by representatives of bar associations within the state or commonwealth.

**4.** The supervisory power over grand juries is derived from several sources. Under 18 U.S.C.A. § 3331 (West 1985) and Fed.R.Crim.P. 6(a) a district court is given power to call a grand jury into existence; under Fed.R.Crim.P. 17(a), and 28 U.S.C.A. § 1826(a) (West Supp.1985), respectively, the district court is given the power to issue and the duty to enforce grand jury subpoenas.

**5.** The power and independence of the grand jury, and their relationship to PF 15, are discussed in Part II-A below.

harassment, *Branzburg,* 408 U.S. at 707–08, 92 S.Ct. at 2669–70, impeding a defense attorney's ability to prepare an effective defense for his or her client, *In re Grand Jury Matters,* 751 F.2d 13 (1st Cir.1984); *see also In re Grand Jury Subpoena (Legal Services Center),* 615 F.Supp. 958 (D.Mass.1985), post-indictment attempts to gather evidence, *In re Grand Jury Subpoena Duces Tecum, dated January 2, 1985 (Simels),* 767 F.2d 26 (S.D.N.Y.1985), and unnecessary interference with the attorney-client relationship, *In re Special Grand Jury No. 81–1 (Harvey),* 676 F.2d 1005, *vacated,* 697 F.2d 112 (en banc) (when defendant became fugitive) (4th Cir.1982); *In re Terkeltoub,* 256 F.Supp. 683 (S.D.N.Y.1966) (district court had power to refuse to compel nonprivileged attorney-client secrets).

In *In re Pantojas,* 628 F.2d 701 (1st Cir.1980), the Court of Appeals for the First Circuit explicitly acknowledged the power of the district courts incident to their general supervision over grand juries:

> The practical responsibility for controlling grand jury excesses lies with the district court, on which the grand jury must rely for subpoena and contempt procedures....
>
> District courts should ... feel free to require ... [preliminary] showings by the government as a means of assuring themselves that grand juries are not overreaching, or simply as a means of removing the issue of sufficiency of nexus from dispute.

*Id.* at 705.[6]

The courts' supervisory power over federal grand juries may not, of course, be exercised arbitrarily. As the Court of Appeals for this Circuit recently stated:

> judges may [not] arbitrarily interfere with the grand jury's right to every man's evidence. Judges may not, in the guise of exercising supervisory power, create new privileges or enlarge or distort existing ones.

*In re Grand Jury Matters,* 751 F.2d at 18.

■ The question which must therefore be asked here is on which side of the discretionary line falls the review PF 15 requires of district court judges. PF 15's only explicit requirement is one of "prior judicial approval" of a narrowly defined class of subpoenas before they can be served. PF 15 does not prohibit the issuance of such subpoenas, thereby creating a new privilege or expanding an existing one. It does not create a new right to judicial review. Nor does it create new substantive grounds for quashing subpoenas.[7] In sum, PF 15 does nothing more than require an additional review, at an earlier stage in the process than that provided by Fed.R.Crim.P. 17(c).[8] It thus falls well within the ambit of a district court's supervisory power.

## II.  *The Conflict with Federal Law*

Rule 17 of the Federal Rules of Criminal Procedure provides in pertinent part:

> (a) For Attendance of Witnesses; Form; Issuance. A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to

---

**6.** In *Pantojas,* the Court of Appeals declined to impose on the district courts of this circuit a general requirement that before enforcement of a grand jury subpoena the government make a showing that evidence sought be relevant to a proper grand jury investigation.

**7.** In fact, PF 15 prescribes no standards at all to guide a court in making its determination. Although included in the original version submitted by the Massachusetts Bar Association to the SJC, the standards were ultimately deleted from the rule. *See* Memorandum of Defendants, App. D.

**8.** Plaintiffs have construed PF 15 to require judicial approval before issuance of a subpoena by the clerk, as provided in Fed.R.Crim.P. 17(a). But a prosecutor can still pick up a blank subpoena from the court, fill it in as permitted under Rule 17(a), and then seek court approval. PF 15 merely provides that "[i]t is unprofessional conduct for a prosecutor *to subpoena* an attorney ... without prior judicial approval...." (emphasis supplied). By its terms, PF 15 simply requires approval at some time prior to service.

whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served. A subpoena shall be issued by a United States magistrate in a proceeding before him, but it need not be under the seal of the court....

(c) For Production and Documentary Evidence and of Objects. A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive....

(f) For Taking Deposition; ...

(1) Issuance. An order to take a deposition authorizes the issuance by the clerk of the court for the district in which the deposition is to be taken of subpoenas for the persons named or described therein.

Plaintiffs' argument that PF 15 conflicts with Rule 17 is two-fold. First, they allege that PF 15 is inconsistent with the letter and spirit of the rule itself. Second, plaintiffs assert that PF 15 is "incompatible with federal practice respecting grand jury subpoenas," or, put differently, that PF 15 impedes the policies relative to federal grand juries implemented by Rule 17.

Plaintiffs' attack on PF 15 varies depending on whether this court determines that the ethical rule is incorporated by reference in Local Rule 5(d)(4)(B). If it is incorporated, they rely on Fed.R.Crim.P. 57 as the basis of their challenge; if it is not, they rely exclusively on the Supremacy Clause. Because resolution of that issue has no bearing on the outcome of this case, however, and because it is properly reserved for decision by the full court,[9] I do not now determine whether PF 15 is a rule of this court [10] and thus federal law,[11] but address both of plaintiffs' arguments. I respond in Part A of this section to plaintiffs' statutory arguments and in Part B to the constitutional claim.

### A. *Plaintiffs' Challenge Under Fed.R. Crim.P. 57*

Rule 57 provides in part:

Each district court by action of a majority of the judges thereof may from time to time, after giving appropriate public notice and an opportunity to comment, make and amend rules governing its practice not inconsistent with these rules.... In all cases not provided for by rule, the district judges and magistrates may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act.[12]

Accordingly, in order to prevail, plaintiffs must show that PF 15 is inconsistent with the provisions of Rule 17.

### 1. *Meaning and History of Rule 17*

Plaintiffs contend that the "Federal Rules set forth a complete and comprehensive procedure governing grand jury subpoenas ...," precluding district courts from engrafting innovations onto the exclusive provisions of Rule 17. Defendants counter this assertion by claiming that Rule 17 is "little more than a housekeeping

---

9. The Local Rules of this court are currently under revision.

10. *But cf. United States v. Kelly,* 550 F.Supp. 901 (D.Mass.1982) (assuming that Local Rule 5(d)(4)(B) incorporates by reference Massachusetts ethical rules relating to the Prosecution Function).

11. Local Rules, if valid, have the force of law. *United States v. Hvass,* 355 U.S. 570, 78 S.Ct. 501, 2 L.Ed.2d 496 (1958).

12. *See also* 28 U.S.C.A. § 2071 (West 1982):

The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court. Even if PF 15 were not automatically incorporated, the last sentence of Rule 57 would permit judges to regulate their practice in order to assist federal prosecutors to comply with the ethical rule, if it is valid.

rule"—a procedural guide to the court's exercise of its supervisory power.

An initial, though perhaps obvious, response to plaintiffs' characterization of Rule 17 is that the rule nowhere mentions the grand jury. Rather, it governs subpoenas at every stage of criminal process. Moreover, the Advisory Committee Notes to subdivisions (a) and (c) indicate that the "rule is substantially the same as [the corresponding subdivisions of] Rule 45 ... of the Federal Rules of Civil Procedure," strongly suggesting that its provisions, broadly applicable to both civil and criminal litigation, are merely mechanical.[13] The rule simply was not tailored to the special concerns raised when it is invoked by the uniquely powerful grand jury. In this context in particular, "the rules ... do not purport to set outer limits of the power of the court." *United States v. Richter*, 488 F.2d 170 (9th Cir.1973) (citing Fed.R. Crim.P. 57(b)).

■ Plaintiffs claim that PF 15 conflicts with Rule 17(a)'s specific requirements that the clerk of the court issue subpoenas that are signed, sealed, but otherwise blank. But as stated above (*see* note 8 at 120), PF 15 merely requires that judicial approval be obtained at some point prior to service, not prior to issuance. Thus, PF 15 and Rule 17(a) peacefully coexist.

■ The heart of plaintiffs' claim that PF 15 and federal law are inconsistent is their assertion that the omission from Rule 17 of a requirement of prior judicial approval represents a conscious choice by its framers and by Congress.

At the hearing before this court, plaintiffs argued that the relationship between Criminal Rule 17 and Civil Rule 45, the model for the criminal rule, sheds light on the intent of the criminal rule's drafters. As noted above, subsections (a) and (c) of the criminal rule are virtually identical to Rule 45's complementary provisions. Sub-

sections (a) of both rules, which set out the formal requirements for issuance by the clerk of subpoenas *ad testificandum*, do not provide for court involvement. Criminal Rule 17(c) and Civil Rule 45(b), which govern subpoenas *duces tecum*, both provide that the court may quash or modify such a subpoena if it is unreasonable or oppressive. Nothing can be inferred from these parallel provisions concerning the court's authority to implement PF 15.

But plaintiffs apparently contend that the history of Civil Rule 45(d) and Criminal Rule 17(f), which, in their respective domains, control the issuance of subpoenas for taking depositions, bears on the question of the court's power to perform the review compelled by PF 15.

Civil Rule 45(d) originally required court approval before the use of a subpoena commanding production of documentary evidence at depositions. The requirement was later deleted because it was "unnecessary and oppressive on both counsel and court, and it had been criticized by district judges." Fed.R.Civ.P. 45(d) Advisory Committee Note, 1946 amendment. Plaintiffs appear to argue that the omission of a like requirement from Criminal Rule 17 reveals an intentional policy choice to minimize judicial involvement in all aspects of the subpoena process in criminal cases, or, at the very least, to regulate all judicial involvement. The argument fails for two reasons.

First, Rule 17(f), the Criminal Rule corresponding to Civil Rule 45(d), adopts a procedure very different from that prescribed by Rule 45(d). In the civil context, where discovery is encouraged and the taking of depositions the norm, "proof of service of a notice to take a deposition ... constitutes a sufficient authorization for the issuance by the clerk of the court" of a subpoena. Fed. R.Civ.P. 45(d)(1). In a criminal case, however, where use of the deposition device is an "exceptional circumstance[]," only upon

---

**13.** The Rule 17(a) requirement that a subpoena must be issued by the clerk under seal of the court is merely declaratory of statutory law, namely, 28 U.S.C.A. § 1691 (West 1966) which states, "All writs and process issuing from a court of the United States shall be under the seal of the court and signed by the clerk thereof." 2 C. Wright *Federal Practice and Procedure: Criminal 2d* § 273 at 147 (1982). This underscores the ministerial nature of Rule.17(a).

order of the court may a deposition be taken at all. Fed.R.Crim.P. 15(a). Thus, in criminal cases, a court order is an absolute prerequisite to the issuance of a deposition subpoena. *See* Fed.R.Crim.P. 17(f)(1). It is therefore hardly necessary to require that a party again seek leave of the court in order to subpoena documentary evidence. In the civil context, the deletion merely reflected the frequency with which depositions were taken, and the sufficiency of the motion to quash remedy. In the criminal context, however, the drafters responded to the particular concerns of criminal prosecutions by ensuring greater court control. Accordingly, neither the history of Rule 45(d) nor that of Rule 17 supports plaintiffs' theory.

Second, the deletion of a requirement of judicial approval before use of a subpoena *duces tecum* for depositions, a very specific limited circumstance, does not signal an intention to prohibit judicial involvement generally. In particular, it says nothing about the court's authority to approve or disapprove use of a grand jury subpoena.

Plaintiffs further argue that the motion to quash provided in subsection (c) of Rule 17 is, except for contempt, the only means of challenging the validity of a subpoena. Plaintiffs' reliance on Rule 17(c) is equally misplaced. That rule explicitly authorizes the courts to entertain motions to quash only in the case of subpoenas *duces tecum.* There is no provision in the rule for quashing a subpoena *ad testificandum. See* 2 Wright, *Federal Practice and Procedure: Criminal* 2d § 273 at 149 (1982); § 275 at 14 (Supp.1985) ("Rule 17(c) applies only to a subpoena *duces tecum.* It gives no authority to quash a subpoena to compel testimony....") Although commentators have indicated that the better practice is to require the witness to appear and claim any privilege or immunity he or she may have, *id.,* § 273 at 149, courts have repeatedly, when the interests of justice have so warranted, heard and granted (and denied) motions to quash subpoenas to compel testimony. *See, e.g., Amsler v. United States,* 381 F.2d 37 (9th Cir.1967); *In the Matter of Archuleta,* 432 F.Supp. 583 (S.D.N.Y.1977);

*United States v. Pack,* 150 F.Supp. 262 (D.Del.1957); *In re National Window Cleaners, supra.*

The authority of the courts to entertain motions to quash subpoenas to testify is established by the same reasoning that supports this court's power to implement PF 15. *See* Part I, *supra.* That they may do so without offending Rule 17 compels the conclusion that it harbors no silent prohibitions. The judicial approval required by PF 15 is therefore equally permissible under Fed.R.Crim.P. 57.

Plaintiffs have addressed the Court to three cases in support of their theory that silence in federal rules has a preclusive effect. All three are distinguishable.

In *United States v. Spock,* 416 F.2d 165 (1st Cir.1969), the Court of Appeals for the First Circuit reversed the defendants' convictions because the trial judge had submitted special interrogatories to the jury, a procedure provided for by the Civil but not the Criminal Rules. The court noted, "[w]hile the absence of a rule is not necessarily determinative, particularly in light of Fed.R.Crim.P. 57(b), it is highly suggestive." *Id.* at 180. Given that "[t]he constitutional guarantees of due process and trial by jury require that a criminal defendant be afforded the full protection of a jury unfettered, directly or indirectly ...," *id.* at 182, the court reasonably inferred that the framers of the criminal rules deliberately rejected the use of special verdicts. As described earlier herein, neither the history of Rule 17 nor the particular requirement of PF 15 dictates, or even suggests, an analogous inference in the context of this case.

Plaintiffs also cited the unique *United States v. Weinstein,* 452 F.2d 704 (2d Cir. 1971), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972). In that case, the Court of Appeals for the Second Circuit vacated an order by the district court to dismiss an indictment after entering a judgment of conviction. The judge had resorted to this procedural device, not provided for by the criminal rules, because he

believed—despite the government's evidence having passed the test of legal sufficiency—that the "interests of justice" required it. The basis for the court of appeals' holding was clear—the district court had "broaden[ed] the grounds on which a verdict might be set aside." PF 15, however, as already noted, prescribes no standards for judicial approval of a subpoena. Thus, *Weinstein* is not controlling.

Finally, in *Williams v. United States District Court*, 658 F.2d 430 (6th Cir., *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981), the Court of Appeals for the Sixth Circuit struck down a local rule restricting contact between a class plaintiff or his counsel and actual or potential class members because it frustrated the policies behind Fed.R.Civ.P. 23 by, *inter alia,* discouraging use of the class action device. The court restated the test for determining when a conflict exists between a local rule and federal law:

A local rule is inconsistent with federal rules and statutes if it alters those aspects of the litigation process which bear upon the ultimate outcome of the litigation, thereby frustrating federal policies.

*Id.* at 435 (citing *Colgrove v. Battin,* 413 U.S. 149, 163–64 and n. 23, 93 S.Ct. 2448, 2456 and n. 23, 37 L.Ed.2d 522 (1973); *Miner v. Atlass,* 363 U.S. 641, 649–50, 80 S.Ct. 1300, 1305, 4 L.Ed.2d 1462 (1960)). As will be shown in the next section, the inconsistency found by the *Williams* court between the local rule and Civil Rule 23 simply does not exist between PF 15 and Criminal Rule 17.

### 2. *Policies Behind Rule 17*

The final question is whether PF 15 frustrates the federal policies promoted by Rule 17. *Williams, supra.*

■ The grand jury has broad investigative power; with limited exceptions, it has a right to every person's evidence. *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1959), *cited in United States v. Dionisio,* 410 U.S. 1, 9, 93 S.Ct. 764, 769, 35 L.Ed.2d 67 (1973).

It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquires is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation. . . .

*Blair v. United States,* 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919). The Supreme Court has repeatedly warned against "[a]ny holding that would saddle a grand jury with minitrials and preliminary showings [that] would impede its investigation and frustrate the public's interest in the fair and expeditious administration of criminal laws." *United States v. Dionisio,* 410 U.S. at 17, 93 S.Ct. at 773.

At the same time, however, the Court has invariably circumscribed its holdings by explicitly reiterating the power of the district courts to control the use of grand jury subpoenas. *See Calandra* 414 U.S. at 346, 94 S.Ct. at 619; *Dionisio,* 410 U.S. at 9, 93 S.Ct. at 769; *Branzburg,* 408 U.S. at 688, 92 S.Ct. at 2660.

■ Thus, the answer to the ultimate question posed by *Williams, supra,* depends upon resolution of two subsidiary issues: first, does PF 15 deprive the grand jury of any person's evidence to an extent not previously permitted under federal law; and second, would it impede the investigations of grand juries with minitrials and preliminary showings.

* As to the first question, it is clear from what has already been said in this opinion that PF 15 provides no new testimonial privileges; nor does it create new grounds for shielding a citizen from his or her duty to provide evidence to a grand jury.

As to the second, plaintiffs have not sustained their burden of demonstrating the requisite harm, in the form of burdensome delays, that is necessary to justify the relief they demand. *See Smith & Wesson, Division of Bangor Punta Corporation v. United States,* 782 F.2d 1074, 1081 (1st Cir. 1985). They have not satisfied this court that PF 15 would require lengthy minitrials or would significantly burden prosecutors

or hinder grand jury investigations.[14] Particularly in light of the constraints already imposed on the United States Attorney by the Justice Department's own Guidelines,[15] this process should work minimal, if any, change in the efficiency of grand jury processes and the effectiveness of grand jury investigations—except, of course, where the grand jury has been receiving evidence which, if it had been brought to the attention of a court, would properly have been suppressed.

I accordingly conclude that no conflict exists between PF 15, as it may be incorporated by Local Rule 5(d)(4)(B), and Rule 17 of the Federal Rules of Criminal Procedure.

### B. *Plaintiffs' Claim Under the Supremacy Clause*

"[T]he Supremacy Clause ... invalidates state laws that 'interfere with, or are contrary to' federal law." *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (quoting *Gibbons v. Ogden,* 9 Wheat. 1, 211, 6 L.Ed. 23 (1824) (Marshall, C.J.)). Under the Supremacy Clause, federal law supersedes state law in several ways. Because plaintiffs do not contend that Congress has either expressly or implicitly pre-empted applicable state law, or that a dominant federal interest has pre-empted an entire field of state law, the issue is whether PF 15:

actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' ... or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' ...

*Id.* (citations omitted).

Plaintiffs rely on *Sperry v. Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), for the principle that under the Supremacy Clause a state ethical rule must fall if it conflicts with federal law. While that principle cannot be disputed, it does not advance plaintiffs' cause.

*Sperry* held that a state ethical rule forbidding the practice of law by nonattorneys was inconsistent with federal law when applied to a practitioner before the United States Patent Office. The federal statute as well as Patent Office regulations expressly authorized the practice. The Court held that a Florida court order enjoining such practice violated the Supremacy Clause, not because state ethical rules are particularly vulnerable to vague notions of federal supremacy, but because an actual conflict existed between the rule and federal law. As shown in Part II–A of this opinion, compliance with both PF 15 and Rule 17 is not a "physical impossibility" and PF 15 does not obstruct the "accomplishment and execution" of federal objectives. It presents no conflict with federal law.

Plaintiffs' final argument, that PF 15 offends the Supremacy Clause because it interferes with federal officers in

---

**14.** In *Colgrove v. Battin,* 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973), the Supreme Court upheld a local rule providing for six-person juries in civil cases against a challenge that it conflicted with Fed.R.Civ.P. 48. The court noted that "there has been shown to be 'no discernible difference between the results reached by the two different-sized juries.'" *Id.* at 163–64, n. 23, 93 S.Ct. at 2456, n. 23 (quoting *Williams v. Florida,* 399 U.S. 78, 101, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 446 (1970)). The Court thus concluded that the local rule worked no substantive change in the ultimate outcome of litigation and accordingly held that no inconsistency existed between the two rules.

Similarly, it is significant for present purposes that the *Schofield* rule, which plainly imposes a heavier burden than does PF 15, was determined to have "not caused any serious disruption of grand jury proceedings" in the Third Circuit. *Hearings on H.R. 94 before the Subcommittee on Immigration, Citizenship, and International Law of the House Committee in the Judiciary,* 95th Cong., 1st Sess. 1589 (1977), *quoted in Harvey, supra,* 676 F.2d at 1012, n. 9. *See In re Grand Jury Proceedings (Schofield),* 486 F.2d 85 (3d Cir.1973).

**15.** *See United States Attorneys' Manual* § 9–2.161(a), requiring that evidence sought from attorneys concerning their clients be needed, relevant, unavailable from other sources, and unprivileged.

the execution of their federal duties, warrants little discussion. It is well settled that the regulation of the legal profession is a proper exercise of state power. *See Sperry,* 373 U.S. at 383 and n. 2, 83 S.Ct. at 1324 and n. 2, and cases cited therein. That power includes the authority to regulate the conduct of federal prosecutors. *See United States v. Kepreos,* 759 F.2d 961, 968, n. 5 (1st Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985). Thus, PF 15 can only be said to impermissibly interfere with plaintiffs' exercise of their duties if it regulates their conduct in a manner that creates an actual conflict with some provision of federal law. It does not.

Accordingly, I conclude that PF 15 does not violate the Supremacy Clause.

*Conclusion*

Because PF 15 does not conflict with federal law, and because its application to federal prosecutors violates neither the Supremacy Clause nor Fed.R.Crim.P. 57, plaintiffs' request for an injunction is denied.

Judgment may be entered accordingly.