Almond v. USDC - R.I.                    CV-93-19-B      04/18/94 P
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE

Lincoln C. Almond,
Edwin J. Gale and
Michael Davitt

          v.                         Civil No. C.  93-19-B (D.N.H.)
                                            CA. 92-0663 (D.R.I.)
U.S. District Court for the
District of Rhode Island, et al.


                          **O R D E R**

     Rhode Island Rule of Professional Conduct 3.8(f) requires

prosecutors to obtain judicial approval before subpoenaing

attorneys to give evidence "concerning a person who is or was

represented by the lawyer when such evidence was obtained as a

result of the attorney-client relationship."  The rule was

originally adopted by the Rhode Island Supreme Court and later

incorporated by reference into the local rules of the Federal

District Court for the District of Rhode Island.  The United

States Attorney for the District of Rhode Island and two of his

assistants presently challenge the state and federal versions of

Rule 3.8(f) by suing the United States District Court for the

District of Rhode Island and its sitting judges (collectively the

"federal defendants"), and the Rhode Island Supreme Court, its

sitting justices and Rhode Island's Chief Disciplinary Counsel

(collectively the "state defendants").  The prosecutors seek

declaratory and injunctive relief, alleging that the federal defendants lacked the power to adopt Rule 3.8(f) as a local federal rule because it (i) is inconsistent with Fed. R. Crim. P. 17, and (ii) impermissibly infringes on the independence of the grand jury. They further contend that since the local rule cannot be enforced as a matter of federal law, the state defendants cannot enforce the state version of Rule 3.8(f) against federal prosecutors without violating the Supremacy Clause.[1] The matter is before me on the parties' cross-motions for summary judgment.[2]

## I. FACTS

### A. Background

This case is the latest skirmish in an on-going battle between federal prosecutors and the criminal defense bar over the

---

[1]Although neither version of Rule 3.8(f) differentiates between grand jury and trial subpoenas, the prosecutors challenge the two rules only to the extent that they require pre-service judicial review of subpoenas issued on the grand jury's behalf. I therefore consider the validity of the two rules only to the extent that they apply to grand jury subpoenas.

[2]The Rhode Island Bar Association and the Rhode Island branch of the American Civil Liberties Union have submitted amicus briefs opposing the prosecutors' motion.

2

legitimacy of attorney subpoenas.  Prior to 1980, prosecutors rarely subpoenaed attorneys to testify about their clients.  In the 1980s, however, a rising crime rate and the growing sophistication of many forms of criminal behavior prompted federal prosecutors to employ new tactics in their "war" on crime.  Criminal conspiracy statutes passed in the 1970s were put to new and more frequent uses; Max D. Stern & David A. Hoffman, Privileged Informers: The Attorney Subpoena Problem and a Proposal for Reform, 136 U. Pa. L. Rev. 1783, 1787 & n.16 (1988) (citing the Racketeer Influenced and Corrupt Organization Act, Pub. L. 91-452, 84 Stat. 941 (1970) (codified at 18 U.S.C. §§ 1961-68), and the Continuing Criminal Enterprise Act, Pub. L. 91-513, 84 Stat. 1265 (1970) (codified at 21 U.S.C. § 848)); new federal laws were passed to help prosecutors track the proceeds of illegal activity and prosecute money launderers; House Committee on Government Operations, Federal Prosecutorial Authority in a Changing Legal Environment:  More Attention Required, H. Rep. No. 986, 101 Cong., 2d Sess., 22-23 (1990) (citing 26 U.S.C. § 6050I and 18 U.S.C. § 1957); and Congress allocated additional funds to hire more federal prosecutors, id. at 1.  This renewed emphasis on law enforcement inevitably led to closer scrutiny of attorneys as potential witnesses to criminal

3

conduct.  Stern & Hoffman, _supra_, at 1787-88; _see also_ David J. Fried, _Too High A Price For Truth: The Exception to the Attorney-Client Privilege for Contemplated Crimes and Frauds_, 64 N.C.L. Rev. 443, 471-76 (1986).

The government's increased use of attorney subpoenas has come under heavy fire from critics who argue that any investigative rewards the government may reap by subpoenaing attorneys come at the "direct expense of the attorney-client relationship."  _United States v. Perry_, 857 F.2d 1346, 1347 (9th Cir. 1988).  The perceived costs of such subpoenas include:  the "chilling effect" produced by the concern that a subpoenaed attorney might betray his or her client's confidential communications; the potential conflict of interest that could result if an attorney were forced to testify against a client; the diversion of the subpoenaed attorney's attention and resources to the "second front" which his or her new interest in the investigation creates; and the Due Process and Sixth Amendment concerns raised by the risk that the attorney might eventually be disqualified from representing his or her client. _United States v. Klubock_, 832 F.2d 649, 653-54 (1st Cir.), _vacated_, 832 F.2d 664 (1st Cir. 1987) (en banc), _aff'g by equally divided Court_ 639 F. Supp. 117 (D. Mass. 1986).  In addition to

4

its costs, critics also argue that the attorney subpoena is too often "a tool of prosecutorial abuse and . . . an unethical tactical device US Attorneys employ to go on a 'fishing expedition' with legal counsel without first pursuing alternative avenues to get the information."  <u>Perry</u>, 857 F.2d at 1347.

Responding to these concerns, the American Bar Association (the "ABA") adopted a 1988 resolution designed to "limit[] the issuance of attorney subpoenas in grand jury and other criminal proceedings to those situations in which there is a genuine need to intrude into the attorney-client relationship."  ABA Standing Committee on Ethics and Prof. Resp. and Criminal Justice Section, <u>Report to House of Delegates</u> 1 (1988).  The resolution created an ethical rule that:  (1) required pre-service judicial approval of attorney subpoenas; (2) specified the standards a judge should consider before approving an attorney subpoena; and (3) provided that this evaluation should take place in the context of an adversary proceeding.  <u>Id.</u>  Following the ABA's lead, several state and federal courts promptly devised disciplinary rules requiring prosecutors to submit attorney subpoenas for similar pre-service judicial approval.  <u>Baylson v. Disciplinary Board</u>, 764 F. Supp. 328, 331 (E.D. Pa. 1991), <u>aff'd</u>, 975 F.2d 102 (1992), <u>cert. denied</u>, 113 S. Ct. 1578 (1993).  The Rhode Island

5

Supreme Court and the Federal District Court for the District of Rhode Island have followed suit.

## B.   The Challenged Rules

In 1988, the Rhode Island Supreme Court adopted a modified version of the ABA's Model Rules of Professional Conduct as an amendment to R.I. Sup. Ct. R. 47.  In re Petition of Almond, 603 A.2d 1087, 1088 (R.I. 1992).  The rule at issue in this case, Rule 3.8(f), provides:

> **Rule 3.8  Special Responsibilities of a Prosecutor.**
> The prosecutor in a criminal case shall:
>                     . . .
> (f) not, without prior judicial approval, subpoena a lawyer for the purpose of compelling the lawyer to provide evidence concerning a person who is or was represented by the lawyer when such evidence was obtained as a result of the attorney-client relationship.

The Comment to Rule 3.8(f) states that the rule was

> added because of the increasing incidence of grand jury and trial subpoenas directed towards attorneys.  It is the belief of the committee that the requirements of prior judicial approval, which should be granted or denied after an opportunity for an adversarial proceeding, will serve as an appropriate safeguard to this practice and its threat to the confidentiality and integrity of the attorney-client relationship.

After thus explaining the rule's purpose, the Comment sets out a

6

five-part standard to guide courts that are called upon to approve attorney subpoenas. According to the Comment,

> prior judicial approval should be withheld unless (1) the information sought is not protected from disclosure by an applicable privilege, (2) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution and is not merely peripheral, cumulative or speculative, (3) the subpoena lists the information sought with particularity, is directed at information regarding a limited subject matter in a reasonably limited period of time, and gives reasonable and timely notice, (4) the purpose of the subpoena is not to harass the attorney or his or her client, and (5) the prosecutor has unsuccessfully made all reasonable attempts to obtain the information sought from non-attorney sources and there is no other feasible alternative to obtain the information.

In 1989, the United States District Court for the District of Rhode Island adopted Rule 3.8(f) and the other Rhode Island Rules of Professional Conduct by amending its Local Rule 4(d) to state that "[t]he rules of Professional Conduct of the Rhode Island Supreme Court shall be the standard of conduct for all attorneys practicing before this court."[3]

The United States Attorney and his assistants intend to use attorney subpoenas in several pending grand jury investigations. They have not yet sought judicial approval for any such subpoenas, however, because they claim that to do so would

---

[3]For clarity, I will refer to the federal version of Rule 3.8(f) as Local Rule 3.8(f).

7

"compromise or otherwise jeopardize [these] investigations." To support this claim, the prosecutors point to the fact that Senior Judge Boyle informed an assistant United States Attorney that he would apply Local Rule 3.8(f) in accordance with its comment's five-part standard. In an affidavit, Chief Judge Legueux has stated that he would do the same. To ensure the secrecy of grand jury proceedings, however, both judges stated that hearings in any adversary proceedings conducted under the rule would be held in camera. Judge Legueux also stated that he would initially review attorney subpoenas ex parte to determine whether they could be properly served. The record is silent regarding the way in which the other judges on the court would enforce the rule.

C. **Procedural History**

The United States Attorney began his attack on Rule 3.8(f) at the state level, writing a letter to the Rhode Island Supreme Court requesting that federal prosecutors be exempted from the state version of the rule. The court treated this letter as a petition to amend the rule, assigned the petition for oral argument and invited briefing by the United States Attorney and various amici curiae. Almond, 603 A.2d at 1088. The United States Attorney proceeded to challenge the rule on three grounds.

8

He argued that the rule: (1) conflicts with the presumed validity of grand jury subpoenas, the grand jury's broad authority to investigate, and the secrecy of grand jury investigations; (2) is inconsistent with Fed. R. Crim. P. 17; and (3) violates the Supremacy Clause because federal grand jury practice and federal criminal procedure are fields governed exclusively by federal law.  Id.  The Court rejected the first two arguments on the merits and held that the third was inapplicable because the rule had been incorporated into the federal district court's local rules and thus was consistent with federal law.  Id. at 1088-90. The court consequently denied the United States Attorney's petition to amend.  Id. at 1090.

After failing to obtain an exemption from the state rule, the United States Attorney then sought an exemption from application of the federal rule on virtually identical grounds. He first wrote to the Federal District Court for the District of Rhode Island requesting that it exempt federal prosecutors from Local Rule 4(d) to the extent that it incorporates Rule 3.8(f). The district court denied the request, stating that "[i]t is the unanimous conclusion of the Judges of this Court that such an action is inadvisable and that the rule should not be rescinded." The United States Attorney then petitioned the First Circuit

9

Court of Appeals for a writ of mandamus requiring the district court to exempt federal prosecutors from the local rule. The First Circuit dismissed the petition, stating that "the proper method for mounting a facial challenge to the validity of Rule 3.8(f) . . . is through an action for declaratory and/or injunctive relief filed in the district court." This challenge to the federal and state versions of Rule 3.8(f) followed.

## II. DISCUSSION[4]

The prosecutors argue that summary judgment is warranted because Local Rule 3.8(f) is beyond the federal district court's power to adopt as a local rule and because enforcement of the state rule against federal prosecutors violates the Supremacy

---

[4]In considering the present motions, I employ the following standard of review. Summary judgment is appropriate when all of the material facts are undisputed and the moving party is entitled to judgment as a matter of law. Rodriquez-Garcia v. Davila, 904 F.2d 90, 94 (1st Cir. 1990)(citing Fed. R. Civ. P. 56 (c)). The burden is on the moving party to establish the lack of a genuine, material factual issue, Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence. Caputo v. Boston Edison Co., 924 F.2d 11, 13 (1st Cir. 1991). However, once the movant has made a properly supported motion for summary judgment, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

10

Clause.  Both groups of defendants contest the merits of these arguments.  The state defendants also argue that this court lacks subject matter jurisdiction over the prosecutors' challenge to the state rule because, in effect, that challenge seeks appellate review of the Rhode Island Supreme Court's refusal to amend the rule.  <u>See</u> <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923).[5]  I begin my analysis of these arguments with the prosecutors' challenge to the local rule.

## A.    **The Local Federal District Court Rule**

Federal district courts have both statutory and inherent authority to prescribe local rules governing the conduct of their business.  28 U.S.C. § 2071; <u>see also</u>, Sara Sun Beale,

---

[5]The parties also make various arguments based on the comment to Rule 3.8(f).  The prosecutors rely on the comment to bolster their claim that the Rule exceeds the Federal District Court's rulemaking power.  The federal defendants argue that they are entitled to summary judgment because the uncertainty surrounding the Rule's application prevents the prosecutors' claims from presenting a justiciable case or controversy.  Alternatively, they contend that the prosecutors are not entitled to summary judgment because this uncertainty creates a genuine factual dispute regarding an issue material to the resolution of this case.  I do not reach these arguments because I conclude that the rule is beyond defendants' power to adopt, regardless of how it might be enforced.

Reconsidering Supervisory Power in Criminal Cases: Constitutional and Statutory Limits on The Authority of the Federal Courts, 84 Colum. L. Rev. 1433, 1464-77 (1984) (discussing inherent authority of federal courts to formulate procedural rules). This power, however, is interstitial. First, district courts may only adopt rules that are not "inconsistent with the statutes or constitution of the United States." Sibbach v. Wilson & Co., 312 U.S. 1, 9-10 (1941); 28 U.S.C. § 2071(a). Second, local rules cannot conflict with rules promulgated by the Supreme Court under the Rules Enabling Act. 28 U.S.C. § 2071(a); Fed. R. Civ. P. 83; Fed. R. Crim P. 57. Finally, local rules codify, rather than expand, the District Courts' existing powers. See Colgrove v. Battin, 413 U.S. 149, 163 n.23 (1973) (without inherent or statutory power to regulate in an area, court cannot do so by local rule).

Given these limitations on district courts' local rulemaking power, I must evaluate Local Rule 3.8(f) by considering:

> [1] whether the rule conflicts with an Act of Congress; [2] whether the rule conflicts with the rules of procedure promulgated by [the Supreme] Court; [3] whether the rule is constitutionally infirm; and [4] whether the subject matter governed by the rule is not within the power of a lower federal court to regulate . . . .

12

<u>Frazier v. Heebe</u>, 482 U.S. 641, 654 (1987) (Rehnquist, C.J., dissenting).  Here, the prosecutors base their challenge on the second and fourth inquiries, arguing that the rule conflicts with Fed. R. Crim. P. 17 and exceeds the District Court's inherent power over the grand jury.  The federal defendants contend that the rule is merely an ethical standard that falls well within the district courts' power over attorney conduct.  I begin with an examination of Rule 17.

1.  **<u>Rule 17</u>**

Rule 17 provides, in pertinent part:

**(a)  For Attendance of Witnesses; Form; Issuance.**  A subpoena shall be issued by the clerk under seal of the court.  It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein.  The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served.  A subpoena shall be issued by a United States Magistrate Judge in a proceeding before that magistrate judge, but it need not be under the seal of the court.

\*   \*   \*

**(c)  For Production of Documentary Evidence and of Objects.**  A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein.  The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive.  The court may direct that books, papers,

13

documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

* * *

**(g) Contempt.** Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued or of the court for the district in which it issued if it was issued by a United States magistrate judge.

Because the pre-service judicial approval required by Local Rule 3.8(f) subjects grand jury subpoenas to mandatory judicial review, at an earlier stage in the process than is otherwise required by Rule 17, the prosecutors argue that the two rules are "inconsistent."[6]  I disagree.

The Third Circuit Court of Appeals' opinion in <u>Baylson v. Disciplinary Bd.</u>, 975 F.2d 102 (3d Cir. 1992), <u>cert. denied</u>, 113 S. Ct. 1578 (1993), best articulates the prosecutors' position.

---

[6]The prosecutors also argue that Local Rule 3.8(f) would be applied in a way that is "inconsistent" with the grand jury secrecy requirement of Fed. R. Crim. P. 6(e).  However, the same secrecy issues arise in the context of post-service motions to quash, and district courts have routinely used <u>in camera</u> procedures to ensure that Rule 6(e) is not violated.  <u>See</u> <u>United States v. R. Enterprises, Inc.</u>, 498 U.S. 292, 302 (1991).  In any event, I need not address this issue because I conclude that Local Rule 3.8(f) is facially invalid.

14

In <u>Baylson</u>, the Third Circuit held that an ethical rule similar to Rule 3.8(f) was void because it conflicted with Rule 17. The court reasoned that, although Rule 17 sets out detailed procedures governing the issuance and enforcement of subpoenas in criminal cases, it "makes no <u>allowance</u> for judicial intervention in subpoena practice." 975 F.2d at 108 (emphasis added). The court further observed that no federal rule "<u>allows</u> for judicial intervention before a subpoena is served." <u>Id.</u> (emphasis added). Because Rule 17 does not grant district courts the "power to screen grand jury subpoenas prior to service", the court concluded that the local rule "impermissibly extend[ed] the ministerial role granted the district courts in the subpoena process." <u>Id.</u>[7]

By focusing on whether Rule 17 "allows" a district court to intervene in the subpoena process prior to service, the Third Circuit essentially held that local rules cannot authorize pre-service judicial review where Rule 17 does not itself authorize

_____

[7]The court also relied on the commentary to Fed. R. Crim. P. 57 to support an alternative holding -- that the local rule was invalid because it "goes beyond the 'matters of detail' contemplated by [Rule] 57." <u>Baylson</u>, 975 F.2d at 108. I reject this conclusion because the commentary to Rule 57 cannot limit the district courts' rulemaking power in ways not prescribed by the Rule's text.

15

this practice. In other words, the court held that Rule 17's silence with respect to pre-service judicial review rendered local rules authorizing this practice inconsistent with the federal rule. I reject the interpretative premise underlying this conclusion because it too narrowly circumscribes the district courts' rulemaking power.

In resolving analogous choice of law issues, the Supreme Court has recognized that a state procedural rule is inconsistent with a federal rule of procedure only if an affirmative "clash" between the plain meanings or purposes of the two rules is "unavoidable." Walker v. Armco Steel Corp., 446 U.S. 740, 749-50 (1980); Stewart Org. v. Ricoh Corp., 487 U.S. 22, 26 & n.4 (1988); Daigle v. Maine Medical Center, 14 F.3d 684, 689 (1st Cir. 1994). A similar approach governs alleged conflicts between local and national procedural rules. See, e.g., Colgrove, 413 U.S. at 163-64 (implicitly applying similar standard in determining that local rule of federal district court did not conflict with Fed. R. Civ. P. 48); Williams v. United States District Court, 658 F.2d 430, 435 (6th Cir.), cert. denied, sub nom Southern Ry. Co. v. Williams, 454 U.S. 1128 (1981) (explicitly applying similar standard to void local rule which frustrated the purpose of Fed. R. Civ. P. 23). Thus, if a

16

district court has the inherent or statutory authority to promulgate a particular local rule, a federal rule of civil or criminal procedure will limit that rulemaking authority only to the extent that there is an affirmative, unavoidable conflict between the two rules. Applying this standard here, I hold that Local Rule 3.8(f) is not inconsistent with Rule 17.

I reach this conclusion for two related reasons. First, the plain meanings of the two rules do not conflict. Local Rule 3.8(f) requires judicial review after a subpoena has been issued but before it is served. Rule 17, in contrast, is concerned with the form, mechanics and post-service enforcement of subpoenas. It neither expressly nor implicitly addresses post-issuance, pre-service judicial intervention in the subpoena process. Rule 17 thus leaves a void in subpoena practice that is filled by Local Rule 3.8(f). Consequently, at least on their face, the two rules are complimentary, not inconsistent.[8]

Second, Rule 17's failure to address pre-service judicial intervention in the subpoena process does not preclude local

_____

[8]Rule 17(c) does specify that a document subpoena can be quashed only "on motion" and "if compliance would be unreasonable . . . ." R. Enterprises, 498 U.S. at 301. However, the rule is silent with respect to the way in which testimonial subpoenas may be challenged.

rulemaking in this area. As a general matter, 28 U.S.C. § 2071 and Fed. R. Crim. P. 57 indicate that, absent affirmative evidence to the contrary, the Federal Rules' silence on a particular subject should not be construed as preclusive. See United States v. Spock, 416 F.2d 165, 180 (1st Cir. 1969). This is especially true with respect to Rule 17 since the district courts' widely-recognized power to entertain motions to quash testimonial subpoenas requires district courts to exercise authority not granted by the rule. See Klubock, 832 F.2d at 656. That this remedy exists, despite not being expressly authorized by Rule 17, indicates that the rule's silence with respect to a particular subject matter was not meant to be preclusive. Id.

Given the above analysis, the "clash" which the Third Circuit found between Local Rule 3.8(f) and Rule 17 is more apparent than real. Moreover, limits on the district courts' supervisory power over the grand jury, and thus over subpoenas served on the grand jury's behalf, cannot be read into Rule 17 to create an "unavoidable" conflict. Such limits, however, may independently affect Local Rule 3.8(f)'s validity. It is to this issue that I now turn.

18

## 2. Supervisory Authority over the Grand Jury

The prosecutors argue that by imposing an additional layer of judicial supervision over the grand jury, Local Rule 3.8(f) impermissibly compromises the grand jury's independence, violates several "critical axioms"[9] governing its day-to-day operation, and thus exceeds the scope of the district courts' supervisory powers. The federal defendants counter that these concerns are inapplicable because Local Rule 3.8(f) is an "ethical" rule governing prosecutorial conduct rather than a procedural rule restraining the grand jury. In addition, they argue that the district courts' well-established power to enforce the attorney-client privilege in grand jury proceedings also allows the courts to protect the attorney-client relationship from potentially harmful intrusions. Resolution of these competing claims requires resolution of the fundamental question presented by this case -- does a district court have the supervisory power to place itself in the role of "gatekeeper" between the grand jury and the witnesses whose evidence it seeks? Without this power, the

_____

[9] The prosecutors allege, inter alia, that Rule 3.8(f) conflicts with the grand jury's: (1) broad investigative powers; (2) the presumption of validity accorded its subpoenas; (3) the secrecy of its proceedings; and (4) its general freedom from procedural detours and delays. See generally, United States v. Williams, 112 S. Ct. 1735 (1992); R. Enterprises, supra.

19

federal defendants do not have the underlying regulatory power necessary to validly adopt Rule 3.8(f) as a local rule. See Section II.A., supra.

Undoubtedly, federal courts "may . . . formulate procedural rules not specifically required by the Constitution or the Congress." United States v. Hasting, 461 U.S. 499, 505 (1983). The Supreme Court, however, has recently stated that this "supervisory power" "deal[s] strictly with the courts' power to control their own procedures." Williams, 112 S. Ct. at 1741 (emphasis in original). In Williams, the Court held that a district court may not invoke its supervisory powers to dismiss an otherwise valid indictment because the Government had failed to disclose exculpatory evidence to the grand jury. Id. at 1737, 1746. In reaching this conclusion, the Court stated that,

> [A]ny power federal courts may have to fashion, on their own initiative, rules of grand jury procedure, is a very limited one, not remotely comparable to the power they maintain over their own proceedings. It certainly would not permit judicial reshaping of the grand jury institution, substantially altering the traditional relationships between the prosecutor, the constituting court, and the grand jury itself.

Id. at 1744 (citations omitted). In the present case, the district court cannot enforce Local Rule 3.8(f) because it

20

assumes a power that the court does not have -- the power to fundamentally alter the historic relationship between the grand jury and its constituting court.

Absent Local Rule 3.8(f), the district courts' institutional relationship to the grand jury is "so to speak, at arm's length." Id. at 1742. Theoretically, this relationship stems from the fact that the grand jury is mentioned only in the Bill of Rights, and thus is not textually assigned to any of the three branches of government. Id. In practice, the relationship also stems from the grand jury's "operational separateness" from the courts. Id. at 1743. "Although the grand jury normally operates . . . in the courthouse and under judicial auspices," it

> requires no authorization from its constituting court to initiate an investigation, nor does the prosecutor require leave of court to seek a grand jury indictment. And in its day to day functioning, the grand jury generally operates without the interference of a presiding judge. It swears in its own witnesses, and deliberates in total secrecy.

Id. (citations omitted).

Admittedly, the grand jury's actions are still subject to judicial supervision to the extent necessary to prevent or remedy violations of individuals' constitutional, statutory or common law rights. United States v. Calandra, 414 U.S. 338, 346 (1974). Even when performing this protective role, however, district

courts do not directly supervise the grand jury's actions. Before the court can become involved in the proceedings, the grand jury must "appeal" to the district court to compel a witness' compliance with a subpoena, or a witness must move to quash it. <u>Williams</u>, 112 S. Ct. at 1743; <u>R. Enterprises</u>, 498 U.S. at 301 (noting that document subpoenas may be challenged under Fed. R. Crim. P. 17(c) only "on motion"). <u>See also</u>, <u>e.g.</u>, <u>In re Grand Jury Matter</u>, 926 F.2d 348, 350 (4th Cir. 1991); <u>Doe v. DiGenova</u>, 779 F.2d 74, 80 (D.C. Cir. 1985); <u>In re Grand Jury Matters</u>, 751 F.2d 13, 16 (1st Cir. 1984).

Rule 3.8(f) drastically alters this "arm's length" relationship. By mandating that all grand jury subpoenas be approved by a judge prior to service, the rule places the district court in the role of gatekeeper between the grand jury and the witnesses whose evidence it seeks. The rule consequently subordinates the grand jury to the district court in a manner inconsistent with the "presumption of regularity" accorded grand jury proceedings. <u>R. Enterprises</u>, 498 U.S. at 300-01. Further, to the extent that Rule 3.8(f) would allow a district judge to quash an attorney subpoena that seeks confidential, but nevertheless non-privileged, client information, the rule would permit district courts to constrain the grand jury's broad

22

investigatory powers by limiting its "'right to every man's evidence, except for those persons protected by a constitutional, commonlaw, or statutory privilege." United States v. Dionisio, 410 U.S. 1, 9 (1973) (quoting Branzburg v. Hayes, 408 U.S. 665, 688 (1972) (citations omitted)). Such a substantial modification of the relationship between the court and the grand jury exceeds the scope of the district court's supervisory authority. Unsupported by any underlying regulatory power, the district court's adoption of Rule 3.8(f) as a local rule is therefore invalid.[10]

Defendants attempt to avoid this result by arguing that Local Rule 3.8(f) falls within the district court's supervisory power over attorney conduct. See 28 U.S.C. § 1654; Frazier, 482 U.S. at 652 (Rehnquist, C.J., dissenting). To support this argument, they essentially adopt the Klubock panel majority's

---

[10]Although a district court cannot adopt a rule categorically requiring pre-service judicial approval of all attorney subpoenas, it may well have such authority in cases whose unusual circumstances require advance judicial review to vindicate a constitutional, statutory or common law right. See, e.g., Gravel v. United States, 408 U.S. 606, 628-29 (1972) (recognizing that district court may issue a protective order to protect speech and debate clause privilege); In re Grand Jury Matters, 751 F.2d at 18-19 (district court has power to control timing of attorney subpoenas in response to motions to quash). I express no view on this question because it need not be resolved to decide the present case.

23

reasoning that such a rule is not "aimed at grand jury action . . . [but] deals solely with prosecutorial conduct in the prosecutor's capacity as a member of the bar." 832 F.2d at 658.

Two reasons compel me to reject this argument.[11]  First, while Rule 3.8(f) undoubtedly implicates "latent" ethical concerns, labelling it an ethical rule cannot obscure the fact it requires the creation of, and prosecutorial compliance with, a novel form of grand jury procedure.  Second, and more importantly, Klubock's rationale is no longer good law.  Although it was a plausible interpretation of Supreme Court precedent at the time the case was decided, the Supreme Court has since conclusively rejected the notion that an otherwise impermissible rule of grand jury procedure becomes permissible if it is enforced against the prosecutor instead of the grand jury itself. See Williams, 112 S. Ct. at 1745.

In a final attempt to save Local Rule 3.8(f) from invalidation, defendants essentially urge me to determine that the policy concerns underlying the rule warrant its restriction of the grand jury's independence.  More specifically, defendants

---

[11]As a judgment by an equally divided en banc court, Klubock is not binding precedent.  Trans World Airlines v. Hardison, 432 U.S. 63, 73 n.8 (1977).

24

contend that Local Rule 3.8(f) is defensible on public policy grounds because attorney subpoenas seek confidential, possibly privileged, client information; they may result in an attorney being disqualified from representing his or her client; and, for whatever reason, defense attorneys all too often fail to use existing procedural devices to protect their clients' interests. Although these policy arguments are compelling, district courts cannot adopt categorical rules impinging upon the grand jury's independence unless doing so is necessary to protect individuals' constitutional, statutory or common law rights. The federal defendants cannot credibly contend that Rule 3.8(f) plays such a role here. See, e.g., Model Code of Professional Conduct Rule 1.6 cmt. (1983) (unlike the attorney-client privilege, "the rule of client-lawyer confidentiality [does not] appl[y] ... where evidence is sought from the lawyer through compulsion of law"); In re Grand Jury Subpoena Served Upon Doe, 781 F.2d 238, 244-45 (2d Cir.), cert. denied, 475 U.S. 1108 (1986) (prior to indictment, adversary proceeding not initiated against grand jury target; Sixth Amendment right to counsel therefore did not attach and so did not prevent service of grand jury subpoena on target's attorney); see also Calandra, 414 U.S. at 353 (no-one may decline to answer a grand jury subpoena "on the grounds that his

25

responses might prove embarrassing or result in an unwelcome disclosure of his personal affairs").  Thus, for defendants' policy arguments to prevail, they must be raised in a national forum before a body with the authority to enact the fundamental change in grand jury practice that Rule 3.8(f) would require. See Williams, 112 S. Ct. at 1746.

## B.    The State Rule

The invalidity of the Local Rule 3.8(f) leaves its state counterpart exposed to the full force of the Supremacy Clause. The state defendants attempt to shield the rule behind the Rooker-Feldman doctrine, contending that this court lacks subject matter jurisdiction over the prosecutors' Supremacy Clause challenge because, in effect, the prosecutors seek appellate review of the Rhode Island Supreme Court's previous refusal to amend Rule 3.8(f).  See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).  I address this jurisdictional issue before turning to the merits of the prosecutors' Supremacy Clause contentions.

### 1. **Jurisdiction**

The <u>Rooker-Feldman</u> doctrine provides that the federal district courts lack subject matter jurisdiction to review state court judgments. In its simplest application, the doctrine prohibits an unsuccessful state court litigant from attempting to appeal to federal district court rather than petitioning the Supreme Court for a writ of certiorari. The <u>Feldman</u> case illustrates the way in which the doctrine is applied in more procedurally complex situations.

In <u>Feldman</u>, two applicants for admission to the District of Columbia bar brought federal district court actions challenging the District of Columbia Court of Appeals' refusal to waive a bar admission rule requiring bar applicants to have graduated from an accredited law school. The District of Columbia defendants moved to dismiss both cases on the ground that the district court lacked subject matter jurisdiction to consider what defendants claimed was an appeal from a judicial decision of the District of Columbia Court of Appeals. The Supreme Court concluded that the federal court's jurisdiction depended upon whether the bar applicants' federal complaints challenged the Court of Appeals' refusal to waive the rule or whether they were challenging the

27

constitutionality of the rule itself.  Even though both issues had been litigated in the Court of Appeals, the Supreme Court held that:

> to the extent that [the petitioners] sought review in the District Court of the District of Columbia Court of Appeals' denial of their petitions for waiver the District Court lacked subject matter jurisdiction over their complaints . . . .  To the extent that [the petitioners] mounted a general challenge to the constitutionality of [the rule], however, the District Court did have subject matter jurisdiction over their complaints.

Id. at 482-83.  The rationale offered by the court to support this distinction was that a federal court does not review a final state court judgment when it determines the constitutionality of a state rule promulgated in a non-judicial proceeding.  Id. at 486.

Applying Feldman here, I conclude that this court has jurisdiction to entertain the prosecutors' Supremacy Clause challenge for two independent reasons.  First, by definition, the prosecutors are challenging the constitutionality of Rule 3.8(f) rather than attempting to obtain appellate review of the state court's refusal to amend the rule.  Thus, this court has jurisdiction to resolve the constitutional question even though the United States Attorney made the same argument in support of

his request to have the state court amend Rule 3.8(f).  See Buckley v. Illinois Judicial Inquiry Bd., 997 F.2d 224, 227 (7th Cir. 1993); Guess v. Board of Med. Examiners, 967 F.2d 998, 1002-05 (4th Cir. 1992).  Second, although the United States Attorney raised the Supremacy Clause argument in the Rhode Island Supreme Court, that court correctly declined to consider the issue because the federal district court itself had adopted Rule 3.8(f).  Almond, 603 A.2d at 1090; see also, Klubock, 832 F.2d at 651 (Supremacy Claim challenge to state rule will not lie where rule has been validly incorporated into local rules of federal district court).  In this action, the prosecutors request that I examine the constitutionality of Rule 3.8(f) after first determining that the federal version of the rule is invalid.  Thus, this case presents a very different factual setting in which the Supremacy Clause question must be confronted and resolved.  Accordingly, in no sense can this case be considered an appeal from the state court's refusal to amend Rule 3.8(f).[12]  I therefore turn to the merits.

---

[12] I do not determine whether this action is barred by the doctrine of res judicata since the issue has not been raised by the parties.  See Buckley, 997 F.2d at 227.

## 2. **The Supremacy Clause**

The central question presented by the prosecutors' Supremacy Clause challenge is whether a state court may regulate a federal grand jury. As early as <u>McCulloch v. Maryland</u>, the Supreme Court stated that

> [i]t is of the very essence of supremacy to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments, as to exempt its own operations from their own influence.

17 U.S. (4 Wheat.) 316, 427 (1819). The Supreme Court has since construed this statement to mean that states may not directly regulate entities that are creatures of federal law. <u>See, e.g.</u>, <u>Hancock v. Train</u>, 426 U.S. 167, 178-79 (1976) (state cannot prohibit federally-owned air contaminant source from operating without state permit). The federal grand jury is such an entity -- it is a fixture of the federal law whose powers, to the extent not modified by federal statute, remain as they did at common law before the Constitution was adopted. <u>See</u> <u>Williams</u>, 112 S. Ct. at 1742. Thus, because the application of Rule 3.8(f) to federal prosecutors interferes with the functions of federal grand juries, <u>see</u> Section II.A.2. <u>supra</u>, it violates the Supremacy

Clause and is therefore void.[13]  See In re Report of Grand Jury Proceedings, 479 F.2d 458, 460 n.2 (5th Cir. 1973);  United States v. Warren, 26 F. Supp. 333, 334 (E.D.N.Y. 1939).

## III.  CONCLUSION

For the foregoing reasons, the defendants' cross-motions for summary judgment (document nos. 12 and 17) are denied.  The prosecutors' motion for summary judgment (document no. 5) is granted to the extent that it seeks declaratory relief.[14] Accordingly, I declare that:  (1) Local Rule 3.8(f) exceeds the federal district court's rulemaking power; and (2) its state counterpart violates the Supremacy Clause insofar as it prohibits

---

[13]States undoubtedly have the "authority to define and apply the standards of professional conduct applicable to those it admits to practice in its courts." Nix v. Whiteside, 475 U.S. 157, 165 (1986).  Irrespective of whether Rule 3.8(f) falls within this authority, it creates a novel rule of grand jury procedure. See Section II.A.2., supra.  The state rule thus "imposes upon the performance" of federal grand jury practice "conditions not contemplated by Congress," Sperry v. Florida, 373 U.S. 379, 385 (1963), and therefore violates the Supremacy Clause.

[14]I need not address the prosecutors' request for injunctive relief at the present time since they have produced no evidence suggesting that the defendants will not abide by this order. See Steffel v. Thompson, 415 U.S. 452, 475 (1974) (federal court may award declaratory relief regardless of whether injunctive relief may be appropriate).

31

federal prosecutors from subpoenaing attorneys to testify before a federal grand jury without first obtaining judicial approval.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

April 18, 1994

cc:   Lauren Jones, Esq.
      S. Michael Levin, Esq.
      John Dolan, Esq.
      Warren Nighswander, Esq.
      James Gillis, Esq., US DOJ
      Sara Criscitelli, Esq., US DOJ
      Clerk - USDC, R.I.
      Margaret Curran, Esq., USA