658 F.2d 430
 26 Fair Empl.Prac.Cas. 1077,
26 Empl. Prac. Dec. P 32,066
Mzell WILLIAMS, Petitioner,
v.
UNITED STATES DISTRICT COURT, Southern District of Ohio,
W.D. at Cincinnati, Respondent.
 No. 79-3643.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 7, 1980.
Decided Aug. 26, 1981.
As Amended Oct. 5, 1981.
Certiorari Denied Dec. 14, 1981.
See 102 S.Ct. 980.
 
 Douglas G. Cole, Strauss, Troy & Ruehlmann Co., Alan C. Rosser, Cincinnati, Ohio, James C. Hickey, Ewen, MacKenzie & Peden, P.S.C., Louisville, Ky., Barry L. Goldstein, Washington, D. C., William D. Griffiths, Cincinnati, Ohio, Jack Greenberg, Patrick O. Patterson, New York City, for petitioner.
 
 
 1
 James G. Headley, Frost & Jacobs, Robert A. Dimling, Cincinnati, Ohio, Charles A. Horsky/Kathryn P. Covington & Burling, Broderick, Washington, D. C., and William P. Stallsmith, Jr., Washington, D. C., for Cincinnati, New Orleans Southern R. R.
 
 
 2
 Susan Buckingham Reilly, EEOC, Washington, D. C., for intervenor-E.E.O.C.
 
 
 3
 Leonard D. Slutz, Cincinnati, Ohio, for United Transportation Union and UT Local 1190.
 
 
 4
 Patrick O. Patterson, New York City, for petitioner-Mzell Williams.
 
 
 5
 Jeffrey S. Berlin, Joyce E. Mayers, Verner, Liipfert, Bernhard & McPherson, Washington, D. C., for respondent Railroad Companies.
 
 
 6
 Before WEICK and KEITH, Circuit Judges; PHILLIPS, Senior Circuit Judge.
 
 
 7
 KEITH, Circuit Judge.
 
 
 8
 Petitioner Mzell Williams requests that this court issue a writ of mandamus directing the district court below to vacate a "gag" order issued pursuant to a local district court rule. The order prohibits, without prior court approval, communications between petitioner or his counsel and the actual or potential class members in this Title VII race discrimination suit. The petitioner contends that the order and local rule exceed the regulatory powers granted to the federal district courts. The defendants argue that this petition for a writ of mandamus should be denied because issuance of the order was well within the authority granted to the district court.
 
 
 9
 We agree with the petitioner that the order and the local rule exceed the authority of the district court and, accordingly, we issue the requested writ of mandamus.
 
 
 10
 * This race discrimination suit is a class action brought pursuant to Title VII of the 1964 Civil Rights Act, as amended 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981. Petitioner Williams brought the action in November 1974, charging racial discrimination in hiring, testing, promotion, and seniority by the Defendants Southern Railway System (the "System"), Southern Railway Company (the "Company"), Cincinnati, New Orleans and Texas Pacific Railway Company (the "CNO & TP"), United Transportation Union ("UTU"), and United Transportation Local 1190 ("Local 1190"). Petitioner is a black employee of the defendant, and a member of the UTU and Local 1190. He represents two classes of black present and former employees of the CNO & TP and members of the UTU. The classes were certified on March 25, 1977, under Rule 23(b)(2), Federal Rules of Civil Procedure.
 
 
 11
 The petitioner alleges in the instant petition that a series of district court orders, culminating in the district court's July 2, 1979 Order, impermissibly restricted communication between the petitioner and the class members. Because the July 2 "gag" Order was issued pursuant to Local Rule 3.9.4, the petitioner also attacks the validity of that rule. Local Rule 3.9.4 provides, in relevant part:
 
 
 12
 In every potential or actual class action under Rule 23 of the Federal Rules of Civil Procedure, all parties or potential parties and counsel are forbidden, directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent and approval of the proposed communication and proposed addressees by order of the Court. Any such proposed communication shall be presented to the Court in writing with a designation of or description of all addresses and with an application or motion and proposed order for prior approval by the Court of the proposed communication....[1]
 
 
 13
 This Local Rule was designed to prevent potential abuses of the class action mechanism and is patterned after a rule suggested in the Manual for Complex Litigation.[2] The manual notes four prevalent class action communication abuses that the proposed Local Rule is designed to remedy: (1) solicitation of direct legal representation of potential and actual class members who are not formal parties to the class action; (2) solicitation of funds and agreements to pay fees and expenses from potential and actual class members who are not formal parties to the class action; (3) solicitation by defendants of requests by class members to opt out in class actions under subparagraph (b)(3) of Rule 23; and (4) unauthorized direct or indirect communications from counsel or a party, which may misrepresent the status, purposes and effect of the action and of court orders therein and which may confuse actual and potential class members and create impressions which may reflect adversely on the court or the administration of justice.[3] Attorney solicitation of clients, funds, and fee agreements are among the most prevalent perceived evils of the class action procedure. Another is the fear that solicitation will encourage frivolous suits.
 
 
 14
 On three occasions the district court applied Local Rule 3.9.4 restricting communications between the petitioner and class members. In November 1975, petitioner and some members of the class requested that petitioner's counsel meet with 20 to 40 potential class members to discuss the case with them and answer their questions about the litigation. The defendants opposed this meeting and moved under Local Rule 3.9.4 for an order prohibiting any such communication without the prior approval of the court. The district court granted defendants' motion prohibiting the communication without prior court approval and supervision. The court instructed petitioner's counsel that he or she could attend the meeting, but told them to speak only with those persons who answered "yes" to one of two questions: (1) Have you ever asked for a job in the Southern Railway System or any of its components and did not get it because you were black? (2) If you are black and working for Southern, have you not gone after a better job because you would lose your seniority by taking such a job? Petitioner's counsel complied with this court order.
 
 
 15
 The Local Rule was applied again in 1977. In August 1977, after certifying the case as a class action, the district court directed that class members be sent a notice and a two-page questionnaire. The notice stated that the questionnaire should be returned to the clerk of the district court within 15 days. The questionnaire asks the following questions:
 
 
 16
 Do you consent to Mzell Williams and his attorneys representing your interests in this lawsuit?
 
 
 17
 Do you wish to intervene and be represented by an attorney of your own choosing?
 
 
 18
 Have the defendants discriminated against you personally because of your race in the selection of employees for training to become locomotive engineers? If your answer is "yes", please explain how they have done so.
 
 
 19
 Has the United Transportation Union failed to represent your interests with regard to the subjects of selection of employees for engineering training or the operation of the seniority system? If the answer is "yes", please explain how the United Transportation Union has failed to represent your interests.
 
 
 20
 Prior to the mailing of the notice and questionnaire to class members, the petitioner moved the court for an order permitting petitioner's counsel to communicate with class members for the purpose of offering them assistance and legal advice in responding to the questionnaire. This motion was denied. After the notice and questionnaire were mailed to the class members, petitioner's counsel informed the court that he had received requests from class members for assistance and advice, including a request that counsel meet with a group of 20 to 25 class members to provide such assistance and advice. The defendants opposed the requests. The court ruled that petitioner's counsel would not be allowed to attend the proposed meeting because their presence would not be "appropriate". Petitioner's counsel abided by the court's instructions.
 
 
 21
 The third restriction placed upon petitioner and his counsel is the subject of this petition. In January 1979, the petitioner and his counsel moved for permission to contact and interview class members for purposes of discovery and developing facts in preparation for trial. Defendants opposed this motion and filed a motion to limit such communications. The defendants' motion requested that the district court enjoin petitioner and his counsel from communicating with class members except under the following conditions: (1) all communication between petitioner and the class members must be approved by consent of all parties, or in the absence of consent, by the court after opportunity is presented to all parties to be heard; (2) all proposed written communications must be submitted for approval in accordance with (1) above; (3) the substance of all proposed oral communications must be submitted in written form and shall state the reasons why the proposed communication should not be made in writing; and (4) after the oral communication, petitioner must submit to the court and all other parties, a transcript or detailed account, under oath, of the communication.
 
 
 22
 In its order of July 2, 1979, the district court denied petitioner's motion requesting ex parte contact with other class members.[4] The court held that Local Rule 3.9.4 was valid and that it applied to the proposed communications. The court enjoined the petitioner from communicating with class members except in compliance with the court's interpretation of the rule. The court, going further than the defendants' request for a copy of the substance of any proposed communication, ruled that the petitioner would be required under Local Rule 3.9.4 to submit to the court a written sample of each proposed communication and a designation or description of all addressees, and that petitioner and his counsel could not communicate with the class members unless and until the court approved the text of each communication.
 
 
 23
 On July 20, 1979, the petitioner filed a motion in the district court requesting reconsideration of the July 2 order. The petitioner argued that application of the Local Rule violated his rights under the First Amendment. The district court denied the petitioner's motion for reconsideration on March 11, 1980, and by order of March 17, 1980, declined to reconsider that denial. On August 31, 1979, the petitioner filed a notice of appeal to this court from the July 2 order. The CNO & TP moved to dismiss the appeal for lack of subject matter jurisdiction. On February 14, 1980, this court granted the motion to dismiss. The July 2 order was also the basis for the petition for a writ of mandamus filed in this court. On February 5, 1980, we held that the proper remedy for obtaining appellate review of the July 2 order was a mandamus action.[5] This petition for a writ of mandamus followed the February 5 ruling and is properly before this court.
 
 II
 
 24
 The petitioner requests that this court declare the July 2 order and Local Rule 3.9.4 unconstitutional as an impermissible "prior restraint" on speech. However, we do not find it necessary to reach the constitutional issue. In view of the recent decision of the Supreme Court in Gulf Oil Company v. Bernard, --- U.S. ---, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981), we hold that Local Rule 3.9.4, on its face and as applied in the July 2 order are invalid because they unduly and unnecessarily frustrate the policies underlying the class action rule and, therefore, exceed the rule-making authority of the district court.[6]
 
 
 25
 Plaintiffs in Gulf Oil filed a class action alleging discrimination in employment. Defendants moved for an order restricting communications from named plaintiffs and their counsel to class members. The district court granted the motion and entered an order which, like Local Rule 3.9.4, was patterned after a model local rule and order contained in § 1.41 of the Manual for Complex Litigation. The order required prior court approval on all communications concerning the class action between parties, their counsel and actual or potential class members. The order provided a qualified exception in instances in which any party or counsel asserted a constitutional right to communicate. The court made no findings of fact. A divided panel of the United States Court of Appeals for the Fifth Circuit affirmed the district court. 596 F.2d 1249 (5th Cir. 1979). The court granted the plaintiff's petition for a rehearing en banc and reversed the panel's decision. 619 F.2d 459 (5th Cir. 1980). The Fifth Circuit held that the order restricting communications was a prior restraint on constitutionally protected expression; that it did not fit within any of the narrowly defined exceptions to the prohibition against prior restraints; that it was not justified by a showing of direct, immediate, and irreparable damage; that it was not shown to be the least restrictive means of preventing such damage; and that it did not comport with constitutionally required procedural safeguards. The en banc court concluded that there was a first amendment violation. It also concluded that the order was not an appropriate one under Rule 23(d), Fed.R.Civ.P. Id. at 478. The United States Supreme Court affirmed the 5th Circuit's en banc decision. --- U.S. ---, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). The Court adopted a three-prong test to determine the validity of local gag orders. The Gulf Oil test requires that a court look at the order to see if it frustrates a policy underlying Rule 23. Second, if the order does frustrate an underlying policy, then the court must examine the order to determine if it is the least restrictive means available to protect other vital rights which are jeopardized by abuses or potential abuses by a class representative and his counsel. Third, there must be a specific showing by the moving party on the record of abuses or potential abuses. Unless such a showing has been made, the district court has not made a proper finding that the vital rights are in jeopardy and that those rights can only be protected by the "gag" order.
 
 
 26
 A district court's rule-making authority is derived from Fed.R.Civ.Pro. 83[7] and 28 U.S.C. § 2071.[8] Rule 83 and Section 2071 prohibit a district court from issuing local rules which are inconsistent with the Federal Rules of Civil Procedure, Acts of Congress and rules of practice and procedure prescribed by the Supreme Court. A local rule is inconsistent with federal rules and statutes if it alters those aspects of the litigation process which bear upon the ultimate outcome of the litigation, thereby frustrating federal policies. Colgrove v. Battin, 413 U.S. 149, 163-64 and n.23, 93 S.Ct. 2448, 2456, and n. 23, 37 L.Ed.2d 522 (1973); Miner v. Atlass, 363 U.S. 641, 64950, 80 S.Ct. 1300, 1305, 4 L.Ed.2d 1462 (1960).
 
 
 27
 As noted in Gulf, one major purpose of Rule 23 is to allow adjudication in a single action of claims which meet the Rule's requirements.[9] Local Rule 3.9.4 results in a broad ban on communication with absent class members and creates severe obstacles to class litigation. First, the Local Rule prevents petitioner and his counsel from obtaining from absentees, free of defendants' knowledge, information necessary to prove the merits of his claim. It does not take an exceptional defense attorney to review each sample communication with identified class members and determine which claims petitioner will more than likely pursue, which are primary and which are secondary. The rule and order do not interfere with the privacy or confidentiality of interviews conducted of defendants' management and supervisory employees. However, the petitioner is not permitted the same privacy and confidentiality in interviewing the class members who are petitioner's primary sources of information and testimony. A second problem with the "gag" rule is that it hampers the quest for a fair resolution of absentees' claims by prohibiting communications with class members that enable them to make informed decisions about their participation in the pending litigation. Third, the Local Rule tends to discourage communication, and thus to discourage use of the class action device because of fear of premature disclosure to the opposing party. These are the same adverse effects that were present in Gulf Oil.
 
 
 28
 The Supreme Court in Gulf did recognize the potential abuses associated with intra-class communications. Among these are (1) the susceptibility of nonparty class members to solicitation amounting to barratry, (2) the increased opportunities of the parties or counsel to 'drum up' participation in the proceeding, and (3) unapproved communications to class members that misrepresent the status or effect of the pending action. Gulf Oil, supra, --- U.S. at --- n. 12, at 2200 n. 12. Yet the court nevertheless held that:
 
 
 29
 (A)n order limiting communications between the parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23. Gulf, --- U.S. at ---, at 2200.
 
 
 30
 The extreme restrictions on intra-class communications imposed in the instant case would only be appropriate to control abuses or potential abuses which appeared on the record to be egregious. Id. There was no evidence of any abuse or potential abuse introduced below. Thus, this record, like the record in Gulf Oil, discloses neither legal nor factual grounds on which the district court could have determined that it was necessary or appropriate to impose the order. Therefore, we do not reach the question of whether the July 2 order was the remedy most appropriate to curtail the threatened abuses. Accordingly, we issue a writ of mandamus to the district court directing it to vacate its July 2 order and to refrain from enforcing the provisions of Local Rule 3.9.4. The case is remanded to the district court for proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The Local Rule reads in full:
 In every potential or actual class action under Rule 23 of the Federal Rules of Civil Procedure, all parties or potential parties and counsel are forbidden, directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent and approval of the proposed communication and proposed addresses by the order of the Court. Any such proposed communication shall be presented to the Court in writing with a description of all addresses and with an application or motion and proposed order for prior approval by the Court of the proposed communication.
 The communications forbidden by this rule include, but are not limited to (a) solicitation directly or indirectly of legal representation of potential and actual class members who are not formal parties to the class action, (b) solicitation of fees and agreements to pay fees and expenses from potential and actual class members who are not formal parties to the class action, (c) solicitation by formal parties to the classification of requests by class members to opt out in class actions under subparagraph (b)(3) of Rule 23 of the Federal Rules of Civil Procedure and (d) communications from counsel or a party which may tend to misrepresent the status, purposes and effects of the class action, and of any actual or potential court orders therein which may create impressions tending, without cause, to reflect adversely on any party, any counsel, the Court, or any administration of justice. The obligations and prohibitions of this rule are not exclusive. All other ethical, legal and equitable obligations are unaffected by this rule.
 This rule does not forbid (1) communication between an attorney and his client or a prospective client who has, on the initiative of the client or prospective client, consulted with, employed or proposed to employ the attorney or (2) communications occurring in the regular course of business or in the performance of the duties of a public office or agency (such as the Attorney General) which do not have the effect of soliciting representation by counsel, misrepresenting the status, purposes or effect of the action and orders therein. U.S. District Court Rules, S.D. Ohio, Rule 3.9.4.
 
 
 [2]
 Manual for Complex Litigation, 1 Pt. 2 Moore's Federal Practice Part I (Procedures) § 1.41, Pt. II (Appendix) § 1.41 (2d ed. 1979 and 1979-80 Supp.)
 
 
 [3]
 Manual, Pt. I, § 1.41 at 31
 The Manual's recommendations, and the sample local rule and pre-trial order based thereon, have been the subject of much commentary. Some authorities criticize the recommendations and samples for restraining all unapproved communications and only generally excepting constitutionally-protected speech. Contrary authorities, however, have noted that the types of communication which have the potential for abuse are so numerous and unpredictable that the "gag" order and rule are necessary.
 For discussion on the Manual's suggestions, see Wilson, Control of Class Action Abuses Through Regulation of Communications, 4 Class Action Reports 632 (1977); Note, Restrictions on Communications by Class Action Parties and Attorneys, 1980 Duke L.Rev. 360 (April); Comment, 88 Harvard L.Rev. 1911 (1975).
 
 
 [4]
 Mzell Williams v. Southern Railway System, No. C-1-74-442 (S.D.Ohio, July 2, 1979) (Memo: Order Denying Plaintiff's Motion for Approval to Communicate with Class Members and Granting in Part and Denying in Part Defendants' Motion to Limit Communications with Class Members)
 
 
 [5]
 Mzell Williams v. United States District Court, Southern District of Ohio, W.D. at Cincinnati, No. 79-3643 (6th Cir. Feb. 5, 1980). This circuit held that mandamus was the proper remedy since the July 2 discovery order was not appealable and the case presented a "basic undecided question" on an important legal problem. Schlagenhauf v. Holder, 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964)
 
 
 [6]
 This circuit has not addressed the question of the validity of Local Rule 3.9.4. However, the United States District Court, Southern District of Ohio, has construed and upheld the validity of the local rule in several cases. See, e. g., Norris v. Colonial Commercial Corp., 77 F.R.D. 672 (S.D.Ohio 1977); Killian v. Kroger Company, No. C-1-76-470 (S.D.Ohio Sept. 23, 1977 and Feb. 13, 1978). To the extent our decision today mandates, these cases are overruled
 
 
 [7]
 Rule 83 provides:
 Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules ... In all cases not provided for by rule, the district courts may regulate their practices in any manner not inconsistent with these rules.
 
 
 [8]
 28 U.S.C. § 2071 provides:
 The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court.
 
 
 [9]
 The class action device, an invention of equity, was adopted in 1938 to facilitate the adjudication of disputes involving common questions and multiple parties in a single action. The 1966 amendments are consistent with the original purpose. See Advisory Committee Notes, Fed.R.Civ.P. 23, reprinted in 39 F.R.D. 98 (1966), and 12 C. Wright and A. Miller, Federal Practice and Procedure, 411-19 (1973) (app.C). See also Montgomery Ward & Co. v. Langer, 168 F.2d 182, 187 (8th Cir. 1948) ("The class action was an invention of equity ... mothered by the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights nor grant them immunity from their equitable wrongs.") In re General Motors Corporation Engine Interchange Litigation, 594 F.2d 1106, 1127-28 n. 33 (7th Cir.), cert. denied, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979) (class action device is primarily a device to vindicate the rights of individual class members and is also a vehicle for furthering the substantive policies behind legislation); Welmaker v. W. T. Grant Co., 365 F.Supp. 531, 553 (N.D.Ga.1972) "The traditional purpose of a class action is to generate incentive to litigate claims that would otherwise not be litigated because they are so small as to make it impractical to bring individual suits")