PART, in accordance with the rulings set forth in this Opinion and Order.[59]

Ida KENNEDY, et al., Plaintiffs,

v.

UNITED HEALTHCARE OF OHIO, INC., Defendant.

No. C–2–98–0128.

United States District Court, S.D. Ohio, Eastern Division.

March 14, 2002.

---

Robert Armand Perez, Cincinnati, OH, Ellen M Doyle, Malakoff Doyle & Finberg PC, Pittsburgh, PA, for plaintiffs.

Marion H Little, Zeiger & Carpenter—2, Columbus, OH, Timothy E Branson, Dorsey & Whitney LLP, Minneapolis, MN, for defendant.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

Plaintiffs filed this putative class action on February 2, 1998, asserting claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Plaintiffs seek to enforce the terms of their health maintenance organization ("HMO") coverage. Plaintiffs aver that defendant, an HMO, improperly failed to pay plaintiffs benefits as required under the plan when it obtained undisclosed discounts from health care providers, but did not reduce plaintiffs' co-pay which the plan calculates on the basis of a percentage of the health service providers' charges.

Plaintiffs moved to certify on August 31, 2000 (Doc. 60).[1] Defendant opposes certification, arguing, among other things, that claims under Certificate of Coverage 10/92 are barred under that certificate's three-year limitation period.

For the reasons that follow, the Court grants plaintiffs' motion.

### I. Facts

The amended complaint (Doc. 50) names the following plaintiffs: Ida Kennedy; John Kennedy; Ashley Kennedy; Donna Myers; Sherri Hamilton; Georgia Tigner; and Georgia Tigner as the Administrator of the Estate of Ralph Tigner. Thompson Electronics ("Thompson") sponsored an ERISA health and welfare plan ("Plan") for its employees. Plaintiffs Ida Kennedy, Donna Kennedy, and Georgia Tigner worked for Thompson, and participated in the Plan. The other plaintiffs benefitted under the Plan as relatives of Thompson employees.

Defendant United Healthcare of Ohio, Inc. ("defendant") provided benefits under the Plan throughout the relevant period, from 1985 until at least 1995. Defendants issued group certificates for the Plan during this period, all of which provided that the participant and defendant were each responsible for a specific percentage of the health service provider's reasonable charges.[2] The Plan required the provider to request payment from defendant for eligible expenses[3] upon which the co-payment was based.[4] Participants' co-payments were calculated as "20% of Eligible Expenses."

Plaintiffs aver that in the 1980s, unbeknownst to the Plan participants, defendant began to negotiate and enter secret agreements with health service providers under which providers agreed to accept less for their medical services than the amounts they had billed, which is the amount upon which participants' co-payments were based under the Plan. Defendant, however, did not pass on to participants any of the savings realized through the reduced fees. Hence, contrary to the language of the Plan, participants effectively paid more than the 20% co-payment the Plan required.

Plaintiffs provide the following example in their Memorandum in Support of their Motion to Certify:

---

1. The Clerk transferred this case to the docket of the undersigned District Judge about one year later, on August 21, 2001.

2. The Plan defined reasonable charges as: "**Reasonable and Customary Charges**"—fees for Covered Health Services and supplies which, as determined by the PLAN are either (1) billed charges for Covered Services; or (2) representative of the average and prevailing charge for the same Health Service in the same or similar geographic communities where the health services are rendered, in PLAN's judgment, and which do not exceed the fees that the provider would charge any other payer for the same services.

3. The Plan defined eligible expenses as: "**Eligible Expenses**"—Reasonable and Customary Charges for Health Services Covered under the Policy, incurred while the policy is in effect.

4. The Plan provided: **Reimbursement of Eligible Expenses**. Participating providers are responsible for submitting a request for payment of Eligible Expenses directly to the PLAN. Participating providers must seek reimbursement from the PLAN and may directly charge a Covered person only for approved Co-payments and any deductible amounts.

Plaintiff Georgia Tigner's claims history indicates that [defendant] UHCO paid $90.48 to Doctors Ohio Health Corporation on September 19, 1992, for a claim related to services provided on August 8, 1997. (Ps' Exhibit "11", K100418–100419). UHCO's records clearly show that UHCO determined Georgia Tigner's co-payment for this claim, $26.31, by calculating 20% of $131.53, the provider's scheduled charge. However, instead of the scheduled charge, Doctor's Ohio Health Corporation accepted $116.79 as payment for the services ($26.31 from Georgia Tigner and $90.48 from UHCO)—a discount of $14.74. UHCO did not give Ms. Tigner the benefit of the discount. Plaintiffs claim that UHCO should have calculated Ms. Tigner's co-payment for this particular claim to be $23.36 (i.e., 20% of $116.79—the amount the health care provider was actually paid) and not the $26.31 Ms. Tigner was forced to pay.

Mem. in Support of Mot. for Class Cert. (Doc. 60) at 4–5.

On November 23, 1994, the Ohio Department of Insurance issued a public bulletin concerning disclosure and use of provider discounts. It stated that the Department considered it an unfair and deceptive practice for an insurance company "to not calculate the co-payment to be paid by an individual entitled to coverage under an insurance policy on the basis set forth in that insurance policy [and where the] contract provides for a calculation of a covered individual's co-payment, not to disclose such method of calculation in the certificate or evidence of coverage provided to individuals entitled to coverage." In response to the bulletin, defendant changed its calculation practices, and later changed its certificate language.

Plaintiffs filed this putative class action on February 2, 1998, seeking declaratory and equitable relief, including restitution. On March 31, 1999, the Court granted defendant's motion to dismiss Count II (breach of fiduciary duty), Count III (to clarify and enforce right to recover excessive payments made by participants), and Count IV (accounting). One claim remained, Count I, for breach of the Plan under 29 U.S.C. § 1132(a)(1)(B).

On April 20, 1999, defendant moved for summary judgment. On March 8, 2000, the Court granted defendant's summary judgment motion in part, and dismissed two of the originally-named plaintiffs from the action. The Court, however, denied summary judgment as to claims related to Ida Kennedy, and granted plaintiffs leave to amend their complaint. Plaintiffs filed their amended complaint on March 8, 2000, naming additional plaintiffs, and asserting claims for benefits under the Plan, and for breach of fiduciary duty.

Plaintiffs moved for class certification on August 31, 2000. Defendant filed a response on October 20, 2000, opposing certification on the following grounds:

1. This lawsuit is an abuse of the class action device.

2. Plaintiffs fail to include a time element in their proposed class definition.

3. Plaintiffs fail to satisfy Rule 23(b)(1) because there is no danger that separate judgments would order conflicting practices since defendant has already ceased the challenged practice.

4. Plaintiffs fail to satisfy Rule 23(b)(2) because injunctive and declaratory relief are inappropriate in this case since defendant has already ceased the challenged practice, and because the relief plaintiffs seek relates exclusively or predominantly to money damages.

5. Plaintiffs fail to satisfy Rule 23(b)(3) because they have not demonstrated manageability or that a class action is superior to individual actions.

6. The Court may not properly certify any class that includes claims under Certificate of Coverage 10/92, because any claims under that certificate are time-barred.

Plaintiff filed a reply memorandum on November 29, 2000, which included a time element in the proposed class definition. Defendant filed a sur-reply memorandum on January 22, 2001, limited to the issue of the three-year limitation period set forth in Certificate of Coverage 10/92. Plaintiffs filed a

response to defendant's sur-reply on February 23, 2001. Defendant filed a response to plaintiff's response on March 5, 2001.

On August 21, 2001, the Clerk reassigned this case to the undersigned District Judge.

## II. Discussion

Plaintiffs seek certification of a class consisting of:

All participants and beneficiaries in ERISA-covered employee welfare benefit plans that are underwritten and/or administered by United Healthcare of Ohio, Inc. ("UHCO"), on whose behalf UHCO made payments for health care products or services to providers pursuant to policy clauses, specifying that, after taking into account deductibles, benefits would be paid at [a] percentage of the provider's charges, where UHCO paid less than the designated percentage because of an agreement between UHCO and the provider, at any time between February 2, 1983, and the date UHCO discontinued its practice ("Class"). Excluded from the Class are those individuals who hold or have held any executive position at or for UHCO, and/or the spouses, parents, siblings or children of any such person.

Reply mem. (Doc. 68) at 1.[5]

Turning to the applicable law, the standard for determining whether to certify a case as a class action is set forth in Fed.R.Civ.P. 23. Rule 23(a) provides in pertinent part:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and

adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

The Court must conduct a rigorous analysis in addressing a motion to certify. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996).[6] Although the district court has broad discretion in determining whether to certify a class, its discretion is circumscribed by Rule 23. *Id.*

The parties' designation of a class in pleadings does not necessitate certification. *Id.* Certification requires more than a mere parroting of Rule 23's language. *Id.* The party moving for class certification bears the burden of proving that certification is proper. *Id.* All four prerequisites of Rule 23(a) must be satisfied for certification to be proper. *Id.* In addition, the party seeking certification must demonstrate the applicability of at least one of the subcategories of Rule 23(b). *Id.*

The Court will begin its analysis by examining separately each of the four Rule 23(a) requirements.

### A. Rule 23(a) Requirements

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." This requirement is not amenable to a strict numerical test. *American Medical,* 75 F.3d at 1079. The Court must examine this factor in light of the specific facts of the case. *Id.* Nonetheless, common sense dictates that at some point numbers alone will satisfy the numerosity requirement. *Id.*

■ Defendant does not specifically dispute the numerosity requirement, nor does it concede the issue. Plaintiffs challenge a practice defendant employed for fourteen years. Defendant is a large medical insurer and claims administrator. The Court finds that the proposed class potentially includes

---

**5.** Plaintiffs failed initially to include a time restriction on their proposed class. Motion for Certification (Doc. 60) at 1–2.

**6.** *American Medical* contains a thorough and thoughtful analysis of Rule 23 jurisprudence.

The Court regrets, however, that the court of appeals in *American Medical* used its published decision as an opportunity to vilify a recently deceased Judge of this district.

thousands of members, and readily satisfies the numerosity requirement.

## 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." This requirement is interdependent with the impracticability of joinder requirement. *American Medical,* 75 F.3d at 1080. Together, these tests form the conceptual basis for class actions. *Id.*

> The class-action was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class. For in such cases, the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23.

*Id.* (quoting *General Telephone v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)(internal cites and quotes omitted)). The commonality test is qualitative. *American Medical,* 75 F.3d at 1080 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 3.10 at 3–50). Hence, a single issue common to all members of the class satisfies the requirement. *Id.*

Not every common question satisfies the commonality requirement; at some point of generality and abstraction almost any set of claims exhibits commonality. *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998)(*en banc*). Rather, to satisfy Rule 23(a)(2), the case must present a common issue the resolution of which will advance the litigation. *Id.*

■ Plaintiffs allege that defendant breached the terms of the Plan by failing to calculate participants' co-payments in accordance with the Plan, and failing to disclose its discount agreements with providers. The Court finds that these allegations present factual issues common to all members of the proposed class. Moreover, plaintiffs assert that defendant's interpretations of the Plan violated ERISA, and that participants are entitled to a recalculation of their co-payments or restitution from defendant. The Court finds that these assertions present legal issues common to all members of the proposed class. In short, the Court finds that this case satisfies the commonality requirement.

## 3. Typicality

Rule 23(a)(3) requires "claims or defenses of the representative parties typical of the claims or defenses on the class."

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to the class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*American Medical,* 75 F.3d at 1082 (quoting Newberg, supra, § 3–13 at 3–76 (footnote omitted)). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague,* 133 F.3d at 399.

Differing degrees of injury among class members does not necessarily defeat typicality if the basic injury each class member asserts is the same. *Bittinger v. Tecumseh Products Co.,* 123 F.3d 877, 885 (6th Cir. 1997). Likewise, typicality may be found even if different defenses may apply to some class members. *Id.* at 884.

■ Here, plaintiffs' claims arise from the same conduct on the part of defendant that all members of the proposed class would challenge. If plaintiffs' claims fail on the merits, so too would the claims of all members of the proposed class. Plaintiffs satisfy the typicality requirement.

### 4. Adequacy of Representation

Rule 23(a)(4) requires "the representative parties will fairly and adequately protect the interests of the class." Due process demands this inasmuch as a final judgment will bind all class members. *American Medical,* 75 F.3d at 1083.

To establish adequacy of representation, plaintiffs must satisfy two elements. First, the representative must have interests common with the unnamed members of the class. *Id.* Second, it must be shown that the representatives—through qualified counsel—will vigorously prosecute the interests of the class. *Id.*

■ Defendant accuses plaintiffs' counsel of barratry, arguing that the Court should deny certification because this case constitutes an abuse of the class action process.[7] Specifically, defendant contends that plaintiffs' attorneys recruited plaintiffs and initiated this action, funding it and essentially serving as class representatives. *See Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 n.12 (1981)(recognizing potential abuse of class action process by attorneys or parties drumming up participation in the proceeding); *Carlisle v. LTV Electrosystems, Inc.,* 54 F.R.D. 237, 240 (N.D.Tex.1972)(holding that seeking out people willing to have a class action instituted in their names was an abuse of the class action process); *see also In re Goldchip Funding Co.,* 61 F.R.D. 592, 594–95 (M.D.Pa.1974)(stating broad principle that named plaintiffs must represent the class); *Stavrides v. Mellon Nat'l Bank & Trust Co.,* 60 F.R.D. 634, 637 (W.D.Pa.1973)(authorizing discovery to inquire into actions of plaintiffs' counsel).

When the above-cited decisions were issued, solicitation of clients was generally viewed as a violation of ethical standards for lawyers. That changed. *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio,* 471 U.S. 626, 647, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985).[8] In *Zauderer,* the Ohio Supreme Court disciplined a Columbus, Ohio attorney for running a newspaper ad soliciting potential Dalkon Shield plaintiffs. The Court held that under the First Amendment "[a]n attorney may not be disciplined for soliciting legal business through printed advertising containing truthful and nondeceptive information and advice regarding the legal right of potential clients." If the First Amendment precludes a state supreme court from punishing an attorney for soliciting potential plaintiffs, it logically follows that the First Amendment also forbids denial of class certification for solicitation of potential class representatives.

Even aside from First Amendment concerns, local rules or court orders preventing counsel from soliciting potential class members may be struck down as undermining the federal policies underlying Rule 23. *See Williams v. United States District Court,* 658 F.2d 430, 434–35 (6th Cir.1981). In *Williams,* the court of appeals granted a writ of mandamus directing the district court to vacate a gag order it had issued under a local rule prohibiting communications between a plaintiff or his counsel and potential class members. The local rule at issue in *Williams* was patterned after one set forth in the second edition of the Manual for Complex Litigation § 1.41. The Court notes that the decision defendant cites that is most directly applicable had relied on a similar provision in an early edition of the Manual. *See Carlisle,* 54 F.R.D. at 240. Coincidentally, *Williams* overruled decisions by the United States District Court for the Southern District of Ohio that had upheld a similar local rule. *Williams,* 658 F.2d at 435 n. 6.

In light of *Zauderer* and *Williams,* the Court questions the continuing validity of the earlier district court decisions defendant cites to the extent these cases stand for the proposition that soliciting potential class members constitutes an abuse of the class action procedure. Simply stated, there is nothing *per se* improper about counsel soliciting participation of potential class members.

---

**7.** Defendant presents this argument as a threshold issue. The Court, however, finds that it fits within the adequate representation prong of Rule 23(a)(4).

**8.** *See* Vance G. Casima, *The Constitutional Right to Solicit Potential Class Members in a Class Action,* 25 Gonz. L.Rev. 95 (1989)(discussing *Gulf Oil* and *Zauderer*).

The Court finds no misconduct on the part of plaintiffs' counsel in this case that would warrant denying class certification.

■ The issue remains, however, whether plaintiffs otherwise satisfy the adequate representation requirement.

Counsel in this case has served as class counsel in factually similar cases. The Court finds that counsel is well-qualified to serve as class counsel. The Court further finds that the named plaintiffs are adequate representatives for a class. The Court concludes that the requirements of Rule 23(a)(4) are met in this case.

### B. Rule 23(b) Analysis

To be properly certified, a class action must satisfy each of the four requirements of Rule 23(a), and must also pass at least one of the tests set forth in Rule 23(b) Fed.R.Civ.P. 23(b). Rule 23(b) provides:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions af-

fecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Here, plaintiffs move for certification under all three subsections Rule 23(b). Defendant argues that plaintiffs have failed to satisfy any of the requirements of Rule 23(b).

#### 1. Rule 23(b)(1)

■ Defendant argues that plaintiffs fail to satisfy Rule 23(b)(1) because there is no danger that separate judgments would order conflicting practices since defendant already ceased the challenged practice. Defendant's argument mischaracterizes plaintiffs' claims, and appears to be an attempt to introduce the concept of mootness which is inapplicable to this case. Plaintiffs seek prospective equitable relief on the basis that defendant's earlier practices violated ERISA. Separate lawsuits could result in inconsistent judgments on the merits of such claims. Simply stated, one court could determine that defendant's practice violated ERISA, while another court could conclude that it did not. In fact, this has occurred. *Compare Lefler v. United HealthCare of Utah,* 162 F.Supp.2d 1310 (D.Utah 2001)(granting summary judgment in favor of defendant in case virtually identical to this case) *with Corsini v. United Healthcare Services, Inc.,* 145 F.Supp.2d 184 (D.R.I.2001)(following bench trial, finding in favor of plaintiff class in case virtually identical to this case).[9] The Court finds that plaintiffs satisfy Rule 23(b)(1).

---

**9.** *Lefler* and *Corsini* are both class actions. If inconsistent results can be reached in two class actions, then inconsistent results could also be

reached in individual lawsuits against the same defendant.

### 2. Rule 23(b)(2)

■ Defendant contends that plaintiffs fail to satisfy Rule 23(b)(2) because injunctive and declaratory relief are inappropriate in this case because defendant ceased the challenged practice, and because the relief plaintiffs seek relates exclusively or predominantly to money damages. Defendant misreads plaintiffs' amended complaint. Plaintiffs do not seek money damages. Rather, they seek equitable relief. Indeed, "this is a classic 23(b)(2) case, where defendant's alleged actions are generally applicable to the class as a whole and injunctive relief would be appropriate if entitlement to relief is established." *Caranci v. Blue Cross & Blue Shield of Rhode Island,* 194 F.R.D. 27, 40 (D.R.I.2000)(finding Rule 23(b)(2) satisfied in factually similar case).

The Court concludes that this case meets the requirement of Rule 23(b)(2).

### 3. Rule 23(b)(3)

■ Defendant maintains that plaintiffs fail to satisfy Rule 23(b)(3) because they have not demonstrated manageability or that a class action is superior to individual actions.

The district court in *Sinclair v. United HealthCare of Georgia,* Case No. 1:96–CV–3412, slip op. at 9–11 (N.D.Ga. Aug. 31, 1998) thoroughly discussed the requirements of Rule 23(b)(3) in a factually similar case.[10] The court in *Sinclair* found that the plaintiffs satisfied Rule 23(b)(3).

The only notable distinction between *Sinclair* and this case is that in this case the Court *may* be required to make individualized findings as to the tolling of the three-year limitation period provided in Certificate of Coverage 10/92. The potential need for such individualized findings, however, does not necessarily defeat predominance under Rule 23(b)(3). *Waste Management Holdings, Inc. v. Mowbray,* 208 F.3d 288, 297–98 (1st Cir.2000). Here, at least for the moment, the strong showing of commonality and superiority outweighs the potential need for individualized rulings on the three-year limitation. Moreover, even if the Court finds it necessary to apply a discovery rule to the three-year limitation, the matter of the timing of discovery may be amenable to a common proffer, since the basis for discovery may entail published newspaper articles and the like. *See Waste Management Holdings,* 208 F.3d at 297.

At least two other courts have presided in similar cases in which final judgments have been reached. *Lefler v. United HealthCare of Utah,* 162 F.Supp.2d 1310 (D.Utah 2001); *Corsini v. United Healthcare Services, Inc.,* 145 F.Supp.2d 184 (D.R.I.2001). That these cases were litigated to conclusion indicates manageability. The Court finds that this case would be manageable if certified as a class action.

For the above reasons, the Court finds that plaintiffs have satisfied the requirements of Rule 23(b)(3).

### C. Limitation Defense

■ Lastly, defendant argues that the Court may not properly certify any class that includes claims under Certificate of Coverage 10/92, because any claims under that certificate are time-barred. Plaintiffs initially respond that the Court may not properly examine the merits of an affirmative defense in determining whether to certify a class.

Whether and when a court may properly examine the merits of a case in determining class certification has been the subject of continuing discussion and development over the past twenty-seven years. In 1974, the U.S. Supreme Court indicated that courts should not inquire into the merits in deciding whether to certify a class:

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to deter-

---

**10.** The Court commends defendant's counsel for discharging their duty under the *Model Code of Prof'l Responsibility* EC 7–23 by submitting the decision in *Sinclair.* The *Sinclair* decision is unreported, and is not available on Westlaw or Lexis. But for counsels' high standard of ethical conduct, the *Sinclair* decision would not have been available for this Court's consideration. Although, with all due respect, this Court finds *Sinclair's* analysis of the three-year limitation to be lacking (see below), the *Sinclair* court's discussion of Rule 23(b) is both complete and persuasive.

mine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained. This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such '(a)s soon as practicable after the commencement of (the) action ....' In short, we agree with Judge Wisdom's conclusion in *Miller v. Mackey International,* 452 F.2d 424 (C.A.5 1971), where the court rejected a preliminary inquiry into the merits of a proposed class action: 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' *Id.,* at 427.

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In *Eisen,* the principal issue was whether Fed.R.Civ.P. 23 required a class representative in a securities class action to provide notice to all class members. With a claim that amounted to no more than seventy dollars, the plaintiff in *Eisen* sought to shift his notice burden to the defendant because providing notice to the 2.25 million potential class members was extraordinarily costly (roughly $225,000). The district court held that the defendant should bear 90% of the cost, because the plaintiff was "more than likely" to "prevail on his claims." Holding this burden could not be shifted, the Supreme Court affirmed the reversal by the court of appeals. *Eisen,* 417 U.S. at 178, 94 S.Ct. 2140.

Soon after *Eisen,* however, the U.S. Supreme Court recognized the propriety of considering the merits of the plaintiff's claims in connection with the examination of specific requirements of Rule 23:

[e]valuation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims. The typicality of the representative's claims or defenses, the adequacy of the representative, and the presence of common questions of law or fact are obvious examples. The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits....

*Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 n. 12, 98 S.Ct. 2454, 57 L.Ed.2d 351, (1978) (quotation and citation omitted). And later, in *General Tel. Co. of Southwest v. Falcon,* the Court appeared to move even further away from *Eisen,* recognizing:

[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question... [A]ctual, not presumed conformance with Rule 23(a) remains ... indispensable.

*Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *see Newton v. Merrill Lynch, Pierce, Fenner & Smith,* 259 F.3d 154, 166–67 (3rd Cir.2001)(outlining development of the law on this issue, citing other authorities). Thus, a court may be *required* to examine the merits when ruling on a motion to certify a class. *See Castano v. American Tobacco Co.,* 84 F.3d 734, 744 (5th Cir.1996)("[A] court must understand the claims, defenses, relevant facts, and applicable law in order to make a meaningful determination of the certification issues."). Nonetheless, when a court examines the merits in the context of a certification decision, it must always be in reference to a specific requirement of Rule 23. *See Waste Management Holdings,* 208 F.3d at 298 (district court properly considered probable success of waiver defense in connection with predominance determination).[11]

---

**11.** It is also proper for a court to consider a summary judgment motion *before* ruling on a motion to certify a class action. *Thompson v.*

*County of Medina,* 29 F.3d 238, 240–41 (6th Cir.1994). The Court has already done so in this

From a broader perspective, the U.S. Supreme Court has stated unequivocally that courts are not free to fashion new and different standards for certification that depart from the text of Rule 23. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620, 628–29, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). This is true even though such a departure may seem sensible, fair, and more efficient than adhering to Rule 23. *Id.* at 628–29, 117 S.Ct. 2231.

In support of its contention that the Court may properly consider, and in effect rule on the merits of, the scope and enforceability of 10/92's three-year limitation provision, defendant cites unreported decisions by several trial courts in cases virtually identical to this case, in which the courts gave effect to the three-year limitation. *Lefler v. United Healthcare of Utah,* Case No. 2:95–CV–1109 (D.Utah Jan. 19, 2000); *Sinclair v. United HealthCare of Georgia,* Case No. 1:96–CV–3412 (N.D.Ga. Aug. 31, 1998); *Corsini v. United·Healthcare Corp.,* Case No. CA 96–0608T (D.R.I. Mar. 17, 1998); *Luwemba v. United Healthcare of Georgia, Inc.,* Case No. E–55643 (Fulton County Sup.Ct. Dec. 8, 1998); *St. Germain v. United Health Plans of New England,* Case No. 96–5884 (Providence Sup.Ct., R.I. June 8, 1998). The Court initially notes that all of the courts in the cases defendant cites granted class certification, and one case expressly rejected the same abuse of procedure argument that defendant advances in this case. *See Sinclair* (certifying class, and rejecting defendant's argument that case represented an abuse of the class action procedure). The Court assumes that defendant disagrees with all of these courts on the certification issue. *See Model Code of Prof'l Responsibility* EC 7–23 (attorney submitting adverse authority may challenge its soundness in whole or in part).

More importantly, however, none of the decisions defendant cites even mentions, let alone discusses, the principle set forth in *Eisen.* And, remarkably, none of the decisions attempts to tie the examination of the three-year limitation period to any element

of Rule 23. In fact, none of the decisions contain *any* examination of this significant issue. *See Lefler* at 2–3 (properly addressing three-year limitation issue in *summary judgment* context); *Sinclair* at 11–12 (no consideration of *Eisen*); *Corsini* at 2–3 (no analysis of any kind as to limitation issue); *Luwemba* at 5 (no discussion of *Eisen*); *St. Germain* at 6 (no discussion of *Eisen*).[12] Indeed, some of the decisions defendant cites contain no analysis whatsoever of the three-year limitation. *See Corsini* at 2–3 (stating, without discussion, that the three-year limitation period applies to contract-like ERISA claims); *Luwemba* at 5 (stating, without discussion, "The Court is persuaded by Defendant's argument regarding a three year class period."); *St. Germain* at 6 (stating, without discussion, "The Court finds . . . that the contract claims are governed by the three-year limitations period in defendant's Certificates of Coverage."). With all due respect, the Court finds defendant's authorities unpersuasive, if not inapposite, as to whether this Court should address the merits of defendant's limitation defense in the context of plaintiffs' motion to certify.

The Court in *Eisen* established the principle that courts determining class certification should not consider the merits of the case. Although later decisions modified *Eisen,* they did so only to the extent that examination of the merits may be relevant to the determination of specific requirements of Rule 23. Decisions of the U.S. Supreme Court and federal appellate courts have gone no further than that. This Court declines to depart from this established law on the basis of the unreported trial court decisions defendant cites.

The Court will therefore certify the class including claims under Certificate of Coverage 10/92. In this vein, the Sixth Circuit Court of Appeals has recognized that certification of a class that may include members whose claims are barred by the statute of limitations does not result in prejudice to the defendant. *Eddleman v. Jefferson County, Kentucky,* No. 95–5394, 1996 WL 495013, at

---

case. Opinion and Order of March 8, 2000 (Doc. 49) at 10–11 (Kinneary, J.).

12. The *Luwemba* and *St. Germain* cases were before state courts, and state law on class actions therefore applied.

*2 (6th Cir. Aug. 29, 1996). Defendant may properly raise its limitation defense in a motion for summary judgment under Fed. R.Civ.P. 56. In contrast to Rule 23, the well-established procedures of Rule 56 were, after all, designed to address such issues. For example, plaintiffs contend that in litigating defendant's limitation defense, they would seek, among other things, discovery concerning defendant's interpretation of the 10/92 limitation provision, although defendant argues that discovery could not possibly alter the outcome of this issue.[13] But the point is that Rule 56 provides a specific mechanism for examining such a request for additional discovery. *See* Fed.R.Civ.P. 56(f).

In some respects, defendant's current limitation argument resembles its unsuccessful attempt to assert its un-pleaded set-off in its first summary judgment motion. *See* Opinion and Order of March 8, 2000 (Doc. 49) at 10–11 (Kinneary, J.). Once again, the timing is not right for the issue defendant seeks to raise. "To everything there is a season,"[14] and the proper season for deciding defendant's limitation defense is, in the first instance, after defendant has filed a motion for summary judgment on that issue, and the motion is fully ripe.

### III. Disposition

Based on the above, the Court concludes that this action satisfies all of the requirements of Fed.R.Civ.P. 23, and therefore the Court **GRANTS** plaintiffs' motion to certify class (Doc. 60). The Court **CERTIFIES** the following class under Fed.R.Civ.P. 23:

> All participants and beneficiaries in ERISA-covered employee welfare benefit plans that are underwritten and/or administered by United Healthcare of Ohio, Inc. ("UHCO"), on whose behalf UHCO made payments for health care products or services to providers pursuant to policy clauses, specifying that, after taking into account deductibles, benefits would be paid at percentage of the provider's charges, where UHCO paid less than the designated percentage because of an agreement

between UHCO and the provider, at any time between February 2, 1983, and the date UHCO discontinued its practice ("Class"). Excluded from the Class are those individuals who hold or have held any executive position at or for UHCO, and/or the spouses, parents, siblings or children of any such person.

Counsel shall forthwith arrange to meet and confer with the U.S. Magistrate Judge to discuss whether an agreement can be reached on notice to the class under Fed. R.Civ.P. 23(d)(2), or devise a schedule for briefing the issue of notice. If defendant intends to request a stay of proceedings under Fed.R.Civ.P. 23(f) during the pendency of an interlocutory appeal, counsel and the Magistrate Judge should also create a schedule for briefing that issue. In addition, counsel and the Magistrate Judge should establish a schedule for the filing of any motion for summary judgment and related papers.

The Clerk shall remove Doc. 60 from the Court's pending motions list.

**IT IS SO ORDERED.**

---

13. As noted above, defendant maintains that if plaintiffs proved that the limitation was subject to a discovery rule, then the class could not be certified, as predominance would be absent. Of course, the issue is not that simple. *See Waste Management Holdings*, 208 F.3d at 296 (rejecting any *per se* rule that individualized limitations determinations would preclude class certification).

